IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1688 (GMS) |
| | ) | |
| CABLEVISION SYSTEMS | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1689 (GMS) |
| | ) | |
| CHARTER COMMUNICATIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1690 (GMS) |
| | ) | |
| COMCAST CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1691 (GMS) |
| | ) | |
| COX COMMUNICATIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CSC, CHARTER, COMCAST, AND COX DEFENDANTS'**
**OPENING CLAIM CONSTRUCTION BRIEF AS TO**
**U.S. PATENT NOS. 6,496,579, 6,078,654, AND 6,188,756**

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:                           rsmith@mnat.com
                                      psaindon@mnat.com
Michael L. Brody
WINSTON & STRAWN LLP                  *Attorneys for Defendants CSC Holdings LLC,*
35 West Wacker Drive                  *Comcast Corporation, Comcast Cable*
Chicago, Illinois 60601               *Communications, LLC, Comcast Cable*
(312) 558-5600                        *Communications Management, LLC, Comcast*
                                      *IP Phone, LLC, Comcast Business*
Krishnan Padmanabhan                  *Communications, LLC, Cox Communications,*
WINSTON & STRAWN LLP                  *Inc. and Coxcom, LLC*
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Andrew Sommer
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006-3817
(202) 282-5896

Jude Andre
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002-5242
(713) 651-2715

ASHBY & GEDDES
Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbé
Benjamin T. Horton
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL  60606-6357
(312) 474-6300

*Attorneys for Defendants Charter*
*Communications Inc. and Charter*
*Communications Holding Company LLC*

## TABLE OF CONTENTS

Page

I.  Introduction ...................................................................................................1

II.  The '579 and '654 Patents .............................................................................2

III.  The '756 Patent .............................................................................................3

IV.  Argument .......................................................................................................4

A.  "An intercept," "[T]he intercept" ('654 patent) ........................................4

B.  "In a manner transparent  . . . " ('579, '654, '756 patents) ........................6

C.  "Determining whether a call … should be connected…" ('579 and '654 patents) "Means for determining whether a call … should be connected…" ('579 and '654 patents) "Connecting the call from the calling party access number to the called party access number" ('579 and '654 patents) "Means for connecting the call from the calling party access number to the called party access number" ('579 patent) ...................................................................................8

D.  "calling telephone equipment," "calling location," "calling party telephone user equipment," and "calling telephone user equipment." ('579 and '654 patents).......11

E.  "selecting the transmission path . . . ." and "an intercept that selects a route . . . ." ('654 patent).........................................................................................13

F.  "transmitting to a control location identification for calling telephone equipment and the called telephone equipment" ('579 patent),  "means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" ('579 patent) ....................................................................14

G.  "access location" ('756 patent)...........................................................16

H.  "Checking a status on each of a plurality of  communication access locations . . . to determine which is accessible" ('756 patent)...................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Computer Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1366 (Fed. Cir. 2008)............................................................................7

*Edwards Lifesciences LLC v. Cook, Inc.*,
582 F.3d 1322 (Fed. Cir. 2009)...................................................................... 12, 17

*Mantech Environmental Corp. v. Hudson Environmental Services, Inc.*,
152 F.3d 1368 (Fed. Cir. 1998)..........................................................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008)............................................................................4

OTHER AUTHORITIES

THE AMERICAN HERITAGE DICTIONARY (1992)............................................................5

## I.    Introduction

Plaintiff filed suit on Dec. 11, 2012, asserting U.S. Patent Nos. 6,496,579 ("the '579 patent"), 6,078,654 ("the '654 patent"), and 6,188,756 ("the '756 patent") against the Comcast, Cox, CSC, and Charter defendants, and U.S. Patent 7,724,879 ("the '879 patent") against each of these defendants as well as Time Warner Cable (collectively, the "Cable Defendants").  In accordance with the schedule entered by this Court on October 28, 2013 ("the Schedule") in each of these matters (collectively "the Cable Cases"), a Markman hearing on the disputed claim terms is set for January 16 and 17, 2014 as to the '579, '654, and '756, and '879  patents.  The Schedule calls for all of the Defendants accused on the '879 patent to filed a joint brief on claim construction.  The Schedule also calls for the Defendants accused of infringing the '579, '654, and '756 patents to jointly file a separate brief on claim construction regarding these patents. This is that separate brief on the '579, '654, and '756 patents.

## II.    The '579 and '654 Patents

Both the '579 and '654 patents, which share a specification, disclose techniques intended to improve the efficiency of "call back" (or "ring back") phone calls by "minimizing non-billable system time," i.e., time between call initiation and when an actual connection is made.  *See* '654 pat., 1:20-28; 1:40-1:44[1] (Ex. 3).  "Call back" phone calls, as taught by the '579 and '654 patents, are when the called party is queried and, if the called party is available, two independent calls are made in succession: (1) a first call between a central node and the called party, and (2) a second call between a central node and the calling party.  After both calls are completed, they are merged together connecting the calling party to the called party.  *See* '654 pat., 3:8-16.  The patents require that the initial query – determining whether a call should be connected – be performed "transparent" to the user.  *See* '654 pat., 2:66-3:4.

The '579 and '654 patents also teach performing the initial query over a non-telephony network (i.e., a data network) to conserve bandwidth on the telephone network in the case the called party is unavailable.  Fig. 1 of the patents, provided below, demonstrates connecting a call between calling location 12 and called location 14.  When calling party 12 initiates a call, it is first "intercepted," by local node 16.  *See* '579 pat., 5:1-7 (Ex. 2).  This intercept decides whether to route the call over the conventional telephone network (10), or to perform the initial query described above over the data network.  *Id.*  If the intercept chooses to use the data network, it will send information regarding the called party and calling party to a control location (central switching unit 22), which checks the availability of called location 14 through a first phone call.  *See* '579 pat., 5:24-32.  If called location 14 turns out to be available (i.e., answers), central switching unit 22 launches a second call to the calling location (12), and merges the two calls to connect the parties.  *See* '579 pat., 5:32-40.

---

[1] All citations in the format __:__ refer to the column and line numbers of the respective patent.



FIG. 1

## III.    The '756 Patent

The '756 patent implements the "call back" technique of the '579/'654 patents but does so in situations where the called party may be accessible through one of several networks, such as traditional telephony (e.g., at a home phone), a cellular network (e.g., on a cell phone), or a paging network (e.g., on a pager).  *See*, e.g., '756 pat., Fig. 8; 13:57-65; claim 8 (Ex. 4).  Because the called party may be at one of several locations, the '756 patent teaches that the system must first "initiate[s] an inquiry . . . as to the called party['s] . . . availability."  *See* '756 pat. 2:33-36. If the called party is available, the "call back" method of the '654 and '579 patents is employed: "a first communication is initiated to the called party," a "second communication is initiated to the calling party," and the calls are merged.  *See* '756 pat., 2:36-42; 6:17-28.

## IV.     Argument

AIP, hoping to have a jury determine the scope of claim terms instead of the Court, repeatedly offers "no construction" for numerous terms disputed by Defendants.  The Federal Circuit, however, has explained that "[w]hen the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury must resolve the dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  Because AIP refuses to accept Defendants' constructions for such terms, AIP and Defendants dispute the proper scope of such claim terms and therefore the Court--not a jury--should resolve these disputes.

### A.     "An intercept," "[T]he intercept" ('654 patent)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "intercept"<br>('654, claims 1 and 5) | Device for intercepting and directing a transmission | Device that transparently reroutes a phone call from its intended path to an alternative path |

The parties have two fundamental disputes with respect to this term.  Defendants believe that "intercept" is limited to a device that: (1) reroutes transmissions from their intended paths, and (2) does so transparently.  AIP, on the other hand, argues that an "intercept" simply intercepts and directs a transmission.

An "intercept" is consistently described in the patents as local node 16 ("the interception … by local node 16"), which selects a route for the transmission through either conventional telecommunications network 10 or data network 20.  *See* '654 pat. 6:49-50; '654 pat., 4:63-5:5 ("local node 16 which … then refers to a database which advises it whether to attempt to route the call through channel 20 or whether to employ the conventional communications network 10.").  This route selection – through either the intended conventional network, or an alternative

data network – is also bolstered by the file history.  During prosecution of U.S. Patent 5,710,809, the parent to each of the patents-in-suit, the applicant stated that "an intercept . . . selects the appropriate route for doing so, e.g., *via the data channel or phone network*."  *See* File History of U.S. Patent 5,710,809 ('809 FH), Aug. 27, 1996 Resp. to O.A. at 6 (Ex. 5).  Defendants' construction is also consistent with the plain meaning of "intercept," which is "[t]o stop, deflect, or interrupt the progress or intended course of."  The American Heritage Dictionary (1992) at pg. 939 (Ex. 31).

The claims of '654 patent require that "intercepting" must also be a transparent process. The language of claims 1 and 5 state that selecting a transmission path be performed "in a manner transparent" to the calling and called parties.  The specification further supports this by describing the intercept as a "transparent communications node."  *See* '654 pat., 2:66-3:4.

AIP's construction, on the other hand, is circular.  AIP defines the term "intercept" with the term "intercepting."  AIP also proposes that the intercept need only "direct[] a transmission." This construction is too broad because any equipment within a network, including switches, tandems, or routers, may be said to simply "direct" transmissions through the network by virtue of a transmission entering the device and exiting.

### B.    "In a manner transparent  . . . " ('579, '654, '756 patents)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "In a manner transparent to the calling party and the called party[2]" | Transparent is pertaining to a device or system that processes data without the user being aware of or needing to understand its operation. Otherwise, no construction needed. | Without user input during the call, or user awareness of the system handling the call or the stages of the connection process |

The parties agree that "transparent" to the user means the user is not aware of certain things.  The disagreement is over what, exactly, the user is unaware of.  The defendants believe that for a call or call component to be transparent, the user cannot do three things: (1) provide input to the system, (2) be aware of the identity of the system processing the call, and (3) be aware of the stages of the call connection process.  AIP believes that "transparent" means that the user is only unaware of, or lacks understanding of, the processing system's "operation."  All three of defendants' transparency requirements come from the applicant's own explanation of the term.  In contrast, AIP's proposed construction is inappropriately broad, since a typical caller does not have awareness, let alone an understanding of, a telephony system's operation.

During prosecution, in an effort to overcome the Moll reference, the applicant amended his claims to include the above "transparent" limitations.  *See* File History 6,078,654 ('654 FH), Oct. 29, 1998, Applicant Resp. at 3 (Ex. 6).  In support of this amendment, the applicant cited a dictionary defining "transparent" as "pertaining to a device or system that processes data without

---

[2] There are several variations of the claim term throughout the claims, all of which can be construed in a common manner.  These variations are: "[i]n a manner transparent to a calling party and a called party" ('654 patent, claim 1), "[i]n a manner transparent to the calling party telephone user equipment and the called party telephone user equipment" ('654 patent, claim 5), and "[i]n a manner transparent to users of the calling party access number and the called party access number" ('756 patent, claim 8).

the user being aware of or needing to understand its operation."[3]  *Id.*; *see also* '579 FH, Mar. 15,

2002, Resp. to O.A. at 3 (emphasis in originals) (Ex. 7).  This is the exact definition that AIP

presents to the court.  But the dictionary definition is not all that the applicant submitted to the

examiner as defining "transparent."  In addition to the dictionary, the applicant made three

unequivocal, emphatic statements describing the meaning of "transparent" such that Moll did not

teach his invention.

First, during prosecution of U.S. Patent Application 08/320,269, which underlies each of

the AIP patents, the applicant argued that requiring user input into a touch-tone phone – "e.g., []

special dialing of access numbers" – was not "transparent."  See File History U.S. Patent

Application 08/320,269 ('269 App. FH), May 6, 1996, Resp. to O.A. at 9 (Ex. 5).  Second, the

applicant said that Moll does not perform transparently because in Moll "the user receives an

announcement that the call with be handled by REDIC."  REDIC is the name of the system

processing the call.  *See* '579 FH, Mar. 15, 2002, Resp. to O.A. at 2-3 (Ex. 7).  Third, and finally,

the applicant said that Moll did not teach transparency because it "subject[ed] the caller and

called party to frequent recorded announcements concerning various stages in the call-

connection process."  '654 FH, Jan. 15, 1998,  Letter of Applicant at 6-7; '654 FH, Oct. 29,

1998, Resp. to O.A. at 2-3 (Ex. 6).

In short, AIP's proposal is an impermissible attempt to recapture claim scope already

ceded by the patentee.  *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed.

Cir. 2008) (plaintiffs "cannot recapture claim scope disavowed during prosecution").

---

[3] The applicant made the same "transparent" argument to overcome prior art (the Peoples reference) during prosecution of U.S. Patent Application 08/320,269, which underlies each of the AIP patents.  *See* U.S. Patent Application. 08/320,269, May 6, 1996, Amendment & Remarks at 9.

**C.** **"Determining whether a call … should be connected…" ('579 and '654 patents)**
**"Means for determining whether a call … should be connected…" ('579 and '654 patents)**
**"Connecting the call from the calling party access number to the called party access number"[4] ('579 and '654 patents)**
**"Means for connecting the call from the calling party access number to the called party access number" ('579 patent)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "determining whether a call from the calling location to the called party access number should be connected [via the telecommunication network]" ('654 , claim 1; '579, claim 1) | No construction necessary | Confirming a connection with the called party prior to performing callback to the calling party |
| "means for determining whether a call from the calling location to the called party access number should be connected via the telecommunication network" ('579, claim 5) | No construction necessary<br><br>Structure: a local node | Structure: Central switching unit switch 22<br><br>Function: Confirming a connection between the control location and the called party prior to performing callback to the calling party |

---

[4] Defendants' construction of this phrase applies to the '654 and '579 patents.

| "connecting the call from the calling party access number to the called party access number" ('579, claim 1; '654, claim 1) | No construction needed. | Connecting a first call to the called party with a subsequent second call to the calling party in a manner transparent to the calling party and the called party. |
|---|---|---|
| | | ---------------------- |
| "means for connecting the call from the calling party access number to the called party access number" ('579, claim 5) | ---------------------- <br><br> Structure is a central switching unit | Structure: Central Switching Unit 22 capable of initiating a reverse direction phone call and structural equivalents. <br><br> Function: Connecting a first call to the called party with a subsequent second call to the calling party in a manner transparent to the calling party and the called party |

The claims of the '579 and '654 patents reflect the purpose of the invention – using a "call back" function to conserve bandwidth on the telephone network.  *See* '579 pat., 1:20-28; 1:40-1:44.  As described above, this consists of a two phone call process: (1) a first phone call to the called party confirming their availability, followed by (2) a subsequent "call back" to the calling party.  If those two calls are successful, there is a connection between caller and called parties.  The first step of this process is reflected in the step of "determining whether a call . . . to the called party access number should be connected," as the call should only be connected if the called party is available.  The process of connecting the parties, by bridging their calls, is reflected in the second step of "connecting the call from the calling party . . . to the called party."

The '579 and '654 patents explain, in no uncertain terms, this very particular two-call process.  While certain forms of "call back" were known before, the '579 and '654 patents specifically describe the *order* of the two calls.  Prior art call back systems always had the calling

party called first, and the called party called second.  The applicant clarified that changing the

order of the calls distinguished his invention over the prior art:

> One disadvantage of the prior art systems has therefore been that when the
> callback from the remote switching unit to the calling location is successful, but
> the called party cannot be reached for some reason (in Moll, for example, if the:
> called party does not answer the call from remote REDIC 205), the caller cannot
> be charged for the cost of the callback since the call did not result in successful
> connection to the called party. The cost of the callback must instead be born by
> the company providing the callback service . . .
>
> *By contrast, the present invention ensures that charges for the call from the*
> *switching unit to the calling location are not incurred until the system establishes*
> *that the call to the called telephone equipment has been answered.* This ensures
> that the system provider will not incur charges for calls that cannot be passed onto
> the calling party.  Moreover, the system minimizes the amount of callback
> connection-time for which the calling party cannot be billed by delaying
> establishment of the callback until after a connection with the called party has
> been established.
>
> *See* '579 FH, Mar. 15, 2002, Resp. to O.A. at 3-5 (Ex. 7); '654 FH, Oct. 29, 1998, Resp.

to O.A. at 4-5 (emphasis added) (Ex. 6).

The problem identified by the applicant was that if the called party is unavailable, the

calling party waits on the line until unavailability is confirmed, all the while using up system

time.  *Id.* at 2:31-38.  To avoid this inefficiency, the invention of the '579 and '654 patents

swapped the order of the calls – *first* the called party was reached, and only thereafter, was the

calling party called back.  That way, no connection was made until it was confirmed that both

parties would answer.

Indeed, every embodiment disclosed in the '579 and '654 patents reflects this principle.

Accordingly, in the first embodiment, when a called party answers:

> *[A] callback 40 to the calling party is initiated by central switching unit 22, using*
> *communications network 10.* Thereafter callback 40 proceeds as would a normal
> phone call, passing through local node 16 and, therefrom, to the calling location
> 12. Thereupon, said *second phone call 38 and first phone call 37 are*

10

> *teleconferenced by central switching unit 22, thusly enabling the calling and*
> *called parties to communicate.*

'579 pat., 5:31-39; '654 pat., 5:26-34 (emphasis added).  *See also* '579 pat., 6:32-38; '654 pat.,

6:26-32.  In the second embodiment:

> *[U]nit or switch 22 simultaneously originates calls to node 16 and called location*
> *14,* while monitoring for an answer at location 14. Called location 12 is kept on
> hold by node 16 until location 14 answers and instruction 42 is received from unit
> 22 to node 16 instructing it to complete call 40 to location 12 (see block 69). If an
> answer occurs, *unit 22 completes the call 40 to calling location 12 and conferences*
> *that call to the completed call at location 14, thereby connecting the parties* (see
> block 71).

'579 pat., 7:37-45; '654 pat., 7:32-40 (emphasis added).  Defendants' construction reflects these

clear disclosures and disclaimers over the prior art, and thus should be adopted.  By leaving this

term unconstrued, AIP hopes to read the limitation on the prior art call back system it

distinguished during prosecution.

### D.      "calling telephone equipment," "calling location," "calling party telephone user equipment," and "calling telephone user equipment." ('579 and '654 patents)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "calling telephone equipment" ('579 claims 1, 5)<br><br>"calling location" ('579 claims 1, 5, '654 claim 1)<br><br>"calling party telephone user equipment / calling telephone user equipment" ('654 claim 5) | No construction necessary | Calling telephone |

There are four similar terms in dispute (collectively, the "calling [noun] terms").  Of

these, only "calling location" appears in the specification.  Defendants believe these terms should

be construed together, and given the same meaning, because the patentee used the terms interchangeably. *Edwards Lifesciences LLC v. Cook, Inc.*, 582 F.3d 1322, 1328 (Fed. Cir. 2009) (finding that different terms used interchangeably may carry the same meaning, stating "[d]ifferent terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper.").

The plain language of claims 1 and 5 of the '579 patent, and the plain language of claims 1 and 5 of the '654 patent, recite the same three characteristics for the calling [noun] terms. First, and most importantly, the terms are all modified by "calling," which identifies the originator of the call. Second, the calling [noun] terms are each described as having identification information associated with them. *See, e.g.*, '579 pat., claim 1(a)-(b). Third, the calling [noun] terms are each recited to have the same goal: connection to the called [noun]. *See, e.g.*, '654 pat., claim 1(d). The specification corroborates these claimed characteristics for the only term it actually mentions, "calling location." *See, e.g.*, '579 pat., 4:62-65, Summary of the Invention ("assigning a caller identification number to a calling location").

The plain language of the claims supports not only construing these terms together, but construing them collectively as "calling telephone." Each independent claim in which one of the calling [noun] terms appear recites the invention in the context of "a call," "the call," "numbers," and, literally, "telephones."[5] The inventor demonstrated that he also understood "calling location" to mean a "calling telephone," while distinguishing a prior art reference during

---

[5] Further, a stated goal of the invention is "to reduce system time and operator cost associated with *teleconferencing* of international calls involving at least one reverse direction phonecall." '579 pat., 3:35-38 (emphasis added). Another stated goal is "to provide a method which will reduce the cost of collect and person-to person *long distance phonecalls*." '579 pat., 3:42-44.

prosecution.  In describing the reference, the applicant discussed a successful "call back" to the

"calling location":

> One disadvantage of the prior art systems has therefore been that when the callback from the remote switching unit *to the calling location* is successful, but the called party cannot be reached for some reason (in Moll, for example, if the called party does not answer the call from remote REDIC 205), the caller cannot be charged for the cost of the callback since the call did not result in successful connection to the called party.

File History of US 6,496,579 ('579 FH), Mar. 15, 2002, Resp. to O.A. at 4 (emphasis

added) (Ex. 7).  This concept of successful "call back" must mean a completed call, which can

only occur at a telephone.

E.    **"selecting the transmission path . . . ." and "an intercept that selects a route . . . ." ('654 patent)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "selecting the transmission path connecting a calling location and a called location" ('654, claim 1) | No construction necessary | deciding whether to signal the called party through a data network instead of through the voice network |
| "an intercept that selects a route passing through a control location for connecting a calling party telephone user equipment to a called party telephone user equipment" ('654, claim 5) | Intercept is a device for intercepting and directing a transmission.<br><br>Otherwise, no construction needed. | an intercept that decides whether to signal the called party through a data network instead of through the voice network |

First, Defendants' construction reflects the language of the claims.  The term "selection"

requires choosing between more than one option.  Second, Defendants' construction reflects the

clear disclosure of the specification – that the claimed invention is a system for call connection

using "call back."  As discussed above, '654 patent employs an intercept that decides whether to

route the call over the conventional telephone network (10), or to perform the "call back"

function by querying the availability of the called party over a data network.  *See* '654 pat., 4:66-

5:5 ("whether to attempt to route the call through channel 20 or whether to employ the

conventional communications network 10."). This decision, to send the call through the

conventional network (also referred to in the patent as the PTT) or through a data network (also

referred to in the patent as channel 20), is also reflected in Fig. 2 (emphasis added), provided

below, and the accompanying description. *See* '654 pat., 6:46-58.



FIG. 2

**F.** **"transmitting to a control location identification for calling telephone equipment and the called telephone equipment" ('579 patent), "means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" ('579 patent)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "transmitting to a control location identification for calling telephone equipment and the called telephone equipment" ('579, claim 1), | No construction needed | Transmitting identification information for the calling telephone and the called telephone to a control location over a network independent from the telecommunications network over which the voice communication travels. |
| "means for transmitting to a control location | No construction needed | Structure: transparent |

14

| identification for the calling telephone equipment and the called telephone equipment" ('579, claim 5) | Structure is a communications link | telecommunications node 16 (intercept) and structural equivalents<br><br>Function: Transmitting identification information for the calling telephone and the called telephone to a control location over a network independent from the telecommunications network over which the voice communication travels |
| --- | --- | --- |

The parties agree that "identification information" is transmitted for the called party and calling party. The parties disagree, however, about over which network that information is transmitted. As discussed above, the AIP patents employ an intercept that decides whether to route calls over the conventional telephone network (10) or over data network (20). *See* '579 pat., 5:4-7. If the intercept (telecommunications node 16) decides to route the call over the data network it then "transmit[s]" necessary information – the called party and calling party identification information – to a control location (a central switch responsible for the call back operation). *See* '579 pat., 5:7-10 ("If a decision is made to employ the external channel 20, the calling and called party identification numbers, as well as suitable access and security codes, are transmitted"); *see also* '579 pat., 5:21-32 (showing the information further carried to the control location, central switching unit 22).

With respect to the structure for the means-plus-function term, "means for transmitting to a control location …," AIP's proposal is purposefully vague and contradicts the clear language of the claims and the specification. "Transmitting" is an active function which cannot be performed by a passive structure, such as a "communications link." In addition, by identifying a "communication link," AIP employs a generic term, which could be a link on either conventional telephony network (10) or data network (20). This construction cannot be correct, as the claimed

15

"call back" function occurs over data network (20), and not over any communication link.[6]

Finally, this identification of a "link" contradicts the clear language of the '579 specification, which identifies that the intercept (telecommunications node 16) as responsible for transmitting "identification information" to the "control location."

G.      "access location" ('756 patent)

| Term/Phrase | Plaintiff's Construction | Plaintiff's Construction Defendants' Construction |
|---|---|---|
| "access location" ('756, claim 8) | No construction needed. | End-user device that is the ultimate initiator or ultimate destination of the transmission |

The term "access location" is used just twice in the '756 patent specification and, in both instances, identifies an end-user device such as a telephone or cellular phone, which the system interrogates to determine the present location and availability of the called party.  *See* '756 pat., 1:11-22 ("evaluating different communication access locations to determine where to send a communication"); 5:18-23 ("checks the status of each of these communication networks at different access locations to determine whether *any are being accessed by the party at that time.*") (emphasis added).  This is synonymous with the term "access device" to refer to a "called party" for which a call is destined.[7]  *See* '756 pat., 9:41-45.  Given that the terms, "access location" and "access device" refer to the same thing, they should be construed consistently to

---

[6] Notably, "communications link" does not appear anywhere in the specification or claims of the '579 patent.  Various links are identified, all in relation to the "call back" function, but it is unclear which of these links AIP is identifying as the structure for this means-plus-function term.

[7] Defendants have briefed the term "access device" in relation to the '879 patent and the arguments and support for that term are also applicable to the term "access device" in the '756 patent.

mean an "end user device that is the ultimate initiator or ultimate destination of the

transmission." *See Edwards Lifesciences*, 582 F.3d at 1328.

    **H.**    **"Checking a status on each of a plurality of  communication access locations . . . to determine which is accessible" ('756 patent)**

| Term/Phrase | Plaintiff's Construction | Plaintiff's Construction Defendants' Construction |
|---|---|---|
| "checking a status on each of a plurality of  communication access locations . . . to determine which is accessible" <br><br> ('756, claim 8) | No construction needed. | checking availability for each of a plurality of access locations prior to initiating a call to the called party. |

Defendants believe that "checking a status…" has limitation temporal meaning.  The

status check must be performed *prior to* initiating a call.  Claim 8 of the '756 patent makes clear

that "checking a status …" occurs prior to (1) "checking for authorization to allow

communications [to] . . . the identified access location"  and (2) "routing . . . said

communications through at least said identified access location," as each limitation references

the previous limitations.  *See   Mantech Environmental Corp. v. Hudson Environmental Services,

Inc.*, 152 F.3d 1368, 1376 (Fed. Cir. 1998).  Further, if these latter steps (authorizing a call to the

called party and ringing the called party) are not construed to occur after "checking a status,"

they would be superfluous.

In addition, the '756 patent specification explains that the status of the called party

equipment (i.e., phones) must be checked prior to ringing so as not to unnecessarily occupy

bandwidth if both parties are not available.  *See* '756 pat., 3:9-20.  This status check may occur

in several ways, including an inquiry seeking a status signal (2:28-42), an inquiry as to whether a

called party's computer is online (5:28-29) or, if the called party is on a cellular phone, inquiring

as to the cellular system most recently accessed (5:59-67). In none of these embodiments, though, does initiating the call take place until after the "checking" step is performed.

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Paul Saindon*

OF COUNSEL:

Michael L. Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Andrew Sommer
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006-3817
(202) 282-5896

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Jude Andre
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002-5242
(713) 651-2715

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
psaindon@mnat.com

*Attorneys for Defendants CSC Holdings LLC,*
*Comcast Corporation, Comcast Cable*
*Communications, LLC, Comcast Cable*
*Communications Management, LLC, Comcast*
*IP Phone, LLC, Comcast Business*
*Communications, LLC, Cox Communications,*
*Inc. and Coxcom, LLC*

ASHBY & GEDDES

*/s/ Lauren E. Maguire*
_____

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbé
Benjamin T. Horton
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL  60606-6357
(312) 474-6300

November 19, 2013
7793480

Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants Charter
Communications Inc. and Charter
Communications Holding Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 19, 2013, upon the following in the manner indicated:

Richard D. Kirk, Esquire                                             *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Karen J. Bromberg, Esquire                                        *VIA ELECTRONIC MAIL*
Francisco A. Villegas, Esquire
Damir Cefo, Esquire
Joyce E. Kung, Esquire
Christopher M. P. Jackson, Esquire
COHEN & GRESSER LLP
800 Third Avenue
New York, NY  10022

*/s/ Paul Saindon*

_____

Paul Saindon (#5110)