```
 1                    IN THE UNITED STATES DISTRICT COURT
                      IN AND FOR THE DISTRICT OF DELAWARE
 2
                                   - - -
 3    AIP ACQUISITION LLC,              )      Civil Action
              Plaintiff,                )
 4                                      )
         v.                             )
 5                                      )
      LEVEL 3 COMMUNICATIONS LLC,       )
 6            Defendant.                )      No. 12-617-GMS
                                   - - -
 7
      AIP ACQUISITION LLC,              )
 8            Plaintiff,                )
                                        )
 9       v.                             )
                                        )
10    CS HOLDINGS, LLC,                 )C.A. No. 12-1688-GMS
                                        )C.A. NO. 12-1689-GMS
11    v.                                )C.A. NO. 12-1690-GMS
                                        )C.A. NO. 12-1691-GMS
12    CHARTER COMMUNICATIONS, INC.,     )C.A. NO. 12-1692-GMS
      COMMUNICATIONS HOLDING            )
13    COMPANY, LLC,                     )
                                        )
14    v.                                )
                                        )
15    COMCAST CORPORATION, COMCAST      )
      CABLE COMMUNICATIONS, LLC,        )
16    COMCAST CABLE COMMUNICATIONS      )
      MANAGEMENT, LLC,                  )
17    COMCAST IP PHONE, LLC, and        )
      COMCAST BUSINESS                  )
18    COMMUNICATIONS, LLC,              )
                                        )
19    v.                                )

20
         (Caption Continues on Following Page)
21
                                   - - -
22                          Wilmington, Delaware
                         Tuesday, October 15, 2013
23                              10:30 a.m.
                            Telephone Conference
24

25    BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
```

```
 1     COX COMMUNICATIONS, INC. and    )
       COX COM, LLC,                   )
 2                                     )
       v.                              )
 3                                     )
       TIME WARNER CABLE INC., TIME    )
 4     WARNER CABLE LLC, TIME WARNER   )
       ENTERTAINMENT COMPANY,          )
 5     L.P., TWC COMMUNICATIONS, LLC,  )
       and TWC DIGITAL PHONE LLC,      )
 6                                     )
                 Defendants.           )
 7
                           - - -
 8

 9     APPEARANCES:

10             STEPHEN B. BRAUERMAN, ESQ.
                        -and-
11             FRANCISCO A. VILLEGAS, ESQ., and
               JOYCE E. KUNG, ESQ.
12             Cohen & Gresser LLP
               (New York, NY)
13
                              Counsel for Plaintiff
14
               JACK B. BLUMENFELD, ESQ.
15             Morris Nichols Arsht & Tunnell LLP
                        -and-
16             KRISHAN PADMANABHAN, ESQ.
               Winston & Strawn
17             (New York, NY)

18                    Counsel for Comcast, Cox, and
                      CSC Defendants
19
               LAUREN E. MAGUIRE, ESQ.
20             Ashby & Geddes, P.A.
                        -and-
21             BENJAMIN HORTON, ESQ.
               Marshall Gerstein & Borun LLP
22             (Chicago, IL)

23                    Counsel for Turner Defendants

24

25
```

```
 1    APPEARANCES CONTINUED:
 2            KELLY E. FARNAN, ESQ.
              Richards, Layton & Finger
 3                    =and-
              DANIEL L. REISNER, ESQ.
 4            Kaye Scholer LLP
              (New York, NY)
 5
                              Counsel for Time Warner Cable
 6
                              -  -  -
 7
 8            THE COURT:  Good morning, counsel.  Who is on
 9    the line for plaintiff, please?
10            MR. BRAUERMAN:  Good morning, Your Honor.  This
11    is Steve Brauerman from Bayard.  I am joined on the line by
12    my colleagues Francis Villegas and Joyce Kohn from Cohen &
13    Gresser in New York.
14            THE COURT:  Good morning.  Let's go through the
15    defendants.
16            MR. BLUMENFELD:  Good morning, Your Honor.  Jack
17    Blumenfeld.  I am on for the Comcast, Cox, and CSC
18    defendants, along with Krishan Padmanabhan from Winston &
19    Strawn.
20            THE COURT:  Good morning.
21            MS. FARNAN:  Good morning, Your Honor.  Kelly
22    Farnan at Richards, Layton & Finger.  I am on for Time
23    Warner Cable.  I have my co-counsel, Dan Reisner, from Kaye
24    Scholer in New York on the line.
25            MS. MAGUIRE:  Good morning, Your Honor.  Lauren
```

```
 1     Maguire from Ashby & Geddes for the Turner defendants.  With
 2     me is Ben Horton from Marshall Gerstein.
 3               THE COURT:  Good morning.
 4               Is that it?  Okay.
 5               I have received your letter.  Correct me if I am
 6     wrong.  It seems that the essence of the dispute is that the
 7     plaintiff wants to exclude post-grant proceedings from the
 8     bar and the defendant wants to include them.  Is that an
 9     accurate statement?
10               MS. KUNG:  Your Honor, Joyce Kung for AIP.
11     That's correct, Your Honor.
12               THE COURT:  I wasn't inviting additional
13     comment.  I just want a yes or no as to whether the parties
14     agree that that is the issue?
15               Let me ask this:  Who is going to speak on
16     behalf of the defendants?
17               MR. BLUMENFELD:  Your Honor, Jack Blumenfeld.  I
18     am going to speak on behalf of the defendants.  That is an
19     issue.  I think there is a second issue as well.
20               THE COURT:  We will get to that in a moment,
21     because, as I understood it, the one paragraph in contention
22     is Paragraph 17.  Is that correct?
23               MR. BLUMENFELD:  That is correct, Your Honor.
24               THE COURT:  The way I read the difference is
25     that the plaintiff wants to exclude from the bar post-grant
```

1  matters like inter partes review, reexaminations and like,
2  and the defendant wants to include those. If there is
3  something else there that I have missed, we can get to that
4  in a moment.
5            Does the plaintiff agree on disagree -- do you
6  agree with Mr. Blumenfeld that there is an additional issue
7  other than the one as I have articulated it?
8            MS. KUNG: We believe the only dispute is
9  Paragraph 17, Your Honor.
10           THE COURT: Who is going to speak for the
11 plaintiff on this?
12           MS. KUNG: Primarily myself, Joyce Kung.
13           THE COURT: For the plaintiff, I think I saw you
14 take the position or see you taking the position that
15 essentially no bar is needed at all. Is that correct?
16           MS. KUNG: That's correct, Your Honor.
17           THE COURT: I am going to want to ask to ask
18 you, why does it matter? Why are we on the phone? And then
19 as to the defendants, isn't the plaintiff a non-practicing
20 entity?
21           MR. BLUMENFELD: Yes, Your Honor. As far as we
22 know, the plaintiff is a non-practicing entity.
23           THE COURT: They are organized just to enforce
24 patent rights. Right? They don't make or do anything, they
25 don't prosecute applications. They just enforce patent

Case 1:12-cv-01691-GMS   Document 58   Filed 12/11/13   Page 6 of 19 PageID #: 599

6

```
 1    rights.  Is that correct?
 2              MR. BLUMENFELD:  Well, they prosecute patent
 3    applications, Your Honor.  They don't make products.
 4              THE COURT:  So they do prosecute patent
 5    applications in the various fields that are at issue?
 6              MR. BLUMENFELD:  Yes.  In fact, there is a
 7    continuation application of two of the patents in suit that
 8    is pending.  And there is an inter partes review of one of
 9    the patents in suit that is pending.
10              THE COURT:  That answers that question for me.
11              Back to the plaintiff.  Why do you care?  If a
12    bar is not needed at all, what does it matter?
13              MS. KUNG:  We agree.  We agree we do not need a
14    bar.
15              THE COURT:  Then why do you care what the
16    defendant proposes?  Why don't you accept the defendants'
17    proposal, in other words?
18              Maybe it's Tuesday and I am not being very
19    clear.
20              MS. KUNG:  Sure.  If the Court does believe that
21    a prosecution bar is necessary, we believe that
22    participation in IPR should be excluded and that it should
23    also apply equally to both sides.
24              THE COURT:  Why?
25              MS. KUNG:  In terms of applying equally, for a
```

1    prosecution bar not to apply equally in this case would

2    simply be unfair in finding that either one side's attorney

3    are less trustworthy or that one side's confidential

4    materials are less valuable.  AIP is actually not a,

5    quote-unquote, patent troll.  AIP is part --

6               THE COURT:  I didn't use that language.

7               MS. KUNG:  AIP's predecessors companies and the

8    inventor of the patent in suit, Mr. Mishinsky, do have a

9    long history of commercializing their technologies.  The

10   '879 patent, for example, discloses embodiments of the

11   invention that were actually built and used in the industry.

12   Mr. Mishinsky continues to be active in the industry, and he

13   also continues to grow his own portfolio of business.

14              This is not just an inventor company that only

15   asserts patents.

16              We believe that discovery will require that AIP

17   produce confidential proprietary information that is

18   potentially trade secrets.  While these materials might date

19   back as far as the mid-nineties, much has not been publicly

20   disclosed.  Defendants might claim that because AIP's

21   information is, quote-unquote, old and therefore less

22   valuable, I think the saying goes, if I have seen farther,

23   it's from standing on the shoulders of giants.  That is new

24   inventions and patent applications, new innovations, they

25   all stand on information and developments of the past.

1                We know that several defendants have large,
2    well-established patent programs.
3                So AIP faces the same risks that defendants
4    face.  We stand to lose just as much as they do if we are to
5    believe that there is some inherent risk of inadvertent
6    disclosure.  It is not the type of case where plaintiff only
7    has a prosecution history to produce.  There'll be research
8    and development, schematics, those documents, materials
9    showing the design process that resulted in actual hardware.
10               For defendants to say that the prosecution bar
11   only needs to be one way seems unfair, that is, that our
12   technology is somehow less valuable, less important or less
13   worthy of protection than defendants'.
14               Do you want me to go on about participation in
15   IPR?
16               THE COURT:  Why don't you finish your argument,
17   then I will hear from the other side.
18               MS. KUNG:  Sure.  Thank you.
19               So we believe that if a prosecution bar is
20   necessary, that participation in inter partes reexam be
21   excepted from the bar.  This is an approach that has been
22   taken in Delaware cases, such as Xerox versus Google and
23   Kenexa versus Paleo.  In Kenexa the Court explained that the
24   scope of the claims can't be enlarged by amendment interview
25   exams because reexam involves only the patents and the prior

1 art. The defendants' confidential information is basically
2 irrelevant to the reexam.
3 Here, where Level 3 instituted IPR, because the
4 cases are related, we believe that Kenexa's statement that
5 the reexam is part and parcel of the instant cases is
6 applicable. This is not a situation where new information
7 can be added to broaden the claims. This isn't a situation
8 where broadening of the claims can happen, period.
9 The Xerox case explains, amendments made during
10 reexam can only serve to narrow the original claims. No
11 product that did not infringe a patent before reexamination
12 could ever infringe that patent following reexamination.
13 So furthermore, to the extent additional details
14 are added to a claim in reexam to distinguish from the prior
15 art, those details must already exist in the original patent
16 specification.
17 In addition, Xerox acknowledged that a parallel
18 reexam may not be formally part of the litigation. Choices
19 made before the PTO nonetheless have consequences which are
20 important. The validity of reexamined claims ultimately
21 have to be explained to defendants before a jury. Xerox
22 recognized that trial counsel are better suited to address
23 claim language to this end than reexam counsel. And,
24 moreover, because reexam, and especially inter partes
25 reexam, is an increasingly important venue for challenging

1      patent validity, preventing trial counsel from confidential

2      information, from fully participating in reexam, would force

3      the plaintiff to split its resources between two fronts in

4      essentially the same war.

5                  THE COURT:  Okay.  Are you at the end?

6                  MS. KUNG:  I am.  Thank you, Your Honor.

7                  THE COURT:  Who authored the Xerox opinion?

8                  MS. KUNG:  I apologize?

9                  THE COURT:  Who authored the Xerox opinion?

10                 MS. KUNG:  I believe it was Judge Robinson.

11                 THE COURT:  What have you been able to find from

12     this Judge on this particular issue?

13                 MS. KUNG:  From Judge Robinson?  I apologize.

14                 THE COURT:  This Judge, the Judge who is on the

15     line with you.

16                 MS. KUNG:  In Re Bear Creek, and also, I

17     believe, in Edwards LifeSciences.

18                 THE COURT:  What did I say there?

19                 MS. KUNG:  Well, I believe in those cases

20     prosecution bars were already in place.  The parties who did

21     not want a prosecution bar were trying to get a second bite

22     at an apple.  But in those cases we do acknowledge that you

23     did find for the defendant.

24                 THE COURT:  All right.  Mr. Blumenfeld.

25                 MR. BLUMENFELD:  Your Honor, I am going to skip

1    pretty quickly by whether there should be a bar, because

2    there is ongoing patent activity and the defendants have

3    produced thousands of pages of confidential documents.

4             I don't think there is any question about that.

5             On the question that Your Honor just asked about

6    the decisions, I think the only two I know of from Your

7    Honor are the Edwards and Bear Creek decisions.  Clearly, in

8    Edwards, you held that prosecution, as it was defined in the

9    protective order, included reexamination.  And in Bear

10   Creek, you also applied a bar which included reexamination.

11   I think there was nothing peculiar about those cases that is

12   different from these cases.

13            I think the point is that when you are before

14   the Patent Office, even in a reexamination, or in an IPR,

15   the claims can be amended.  And that creates a high risk of

16   misuse of the defendants' confidential information, and it

17   involves, as the In Re Deutsche Bank case says, competitive

18   decision-making because it permits the patentee to seek to

19   amend its claims or in some instances draft new claims to

20   try to capture what it knows from confidential documents the

21   defendant is doing but trying to avoid the prior art.  And

22   that is a huge competitive advantage to have, if trial

23   counsel can get the documents for purposes of litigation and

24   then use them to craft claims of that sort that capture what

25   the defendants are doing and what it has only learned the

1  defendants are doing through the litigation.
2          As to whether the bar should be unilateral or
3  bilateral, it has nothing to do with whether the defendants'
4  attorneys are more trustworthy than the plaintiff's
5  attorneys.  It has to do with two things, I think.  One is
6  the confidential information being disclosed by the parties,
7  and second, the risk that it can be misused on one side
8  versus the other.
9          Notwithstanding what plaintiff's counsel said,
10  they alleged in their complaint that AIP required the patent
11  portfolio, patent applications in 2010.  That's what they
12  own.  I was a little surprised to hear what was said,
13  because they have told us in the meet-and-confers that their
14  confidential documents are the 1994 invention type documents
15  they are talking about.  It's hard to imagine how anyone
16  could misuse 20-year-old documents on patents that have
17  already issued or are in prosecution against the patentee.
18          And so we haven't heard anything about any
19  confidential information of AIP that could be used here.
20  And as far as we know, they are a holding company with no
21  products and no product developments.  They bought these
22  patents to assert them.  The notion that a predecessor
23  company, which I think is what plaintiff's counsel called
24  them, may be developing products is nice, but it has nothing
25  to do with any ability of the defendants to be able to

1    prosecute any patent applications to use against the
2    plaintiff, because they are just wondering if there is any
3    confidential information of that sort, and, two, there
4    aren't any products.
5               We can't, even if we wanted to, use information
6    to get patents to assert against a non-practicing entity.
7               We don't see any reason why there should be a
8    two-way bar when there is no serious, real risk that the
9    defendants' counsel could misuse the information in
10   prosecution.
11              THE COURT:  So as to your analysis of the cases
12   that have been discussed here, what I believe I hear you to
13   say, Mr. Blumenfeld, is that you don't see any reason to
14   distinguish the two cases that I decided from the facts in
15   this case, anything that distinguishes this case from those?
16              MR. BLUMENFELD:  I don't know anything.  I
17   argued the Edwards case before Your Honor.  I don't know of
18   any difference.  The only difference that I know of is that
19   in that case we already had a protective order in place.  It
20   just said "prosecution."  We came back to you on that issue,
21   and Your Honor held, I believe, that prosecution included
22   reexamination.  And there is good reason for that, because a
23   reexamination includes prosecution.  It includes continued
24   prosecution of the application.
25              So I don't see how that is any different.

1            In Bear Creek, I think Your Honor acknowledged
2  that strategically amending or surrendering claim scope
3  implicates competitive decision-making, which is a good
4  reason why the bar ought to apply in post-grant proceedings
5  as well as in original prosecution.
6            THE COURT:  That is my recollection as well, Mr.
7  Blumenfeld.
8            Ms. Kung, I am curious as to why you wouldn't
9  address those cases and rather suggest that I should go off
10 and follow another case that is only persuasive at best.  It
11 is a colleague on the same level as me.  It's not a Circuit
12 opinion.  I tend to agree with Mr. Blumenfeld that -- I
13 confess, I don't have perfect recall of those facts and
14 circumstances.  But I believe he correctly recounts the
15 posture of the case and my holding.
16            I am a little at sea as to why you wouldn't have
17 discussed those and tried to distinguish these circumstances
18 or this circumstance from those, because you clearly know
19 how I held.
20            MS. KUNG:  Thank you, Your Honor.
21            We believe that these cases were distinguishable
22 because the parties in Bear Creek and Edwards LifeSciences
23 already had protective orders with prosecution bars in
24 place.  At that stage, whichever party had sought the first
25 prosecution bar had already met its burden of showing good

1    cause for such prosecution bar.

2            For example, in Bear Creek, the prosecution bar
3    was agreed to in the Eastern District of Virginia and had
4    already been in place.  And in those cases, again, the
5    parties that were unhappy with the hands they were dealt --

6            THE COURT:  But wasn't I looking at the
7    situation independently, independent of the finding by the
8    District Judge?  That was a different case.  Wherever it
9    was -- I understand your point.  Go ahead.  Let me let you
10   finish.

11           MS. KUNG:  Well, in at least Bear Creek, counsel
12   for which the parties sought admitted that he would also be
13   participating in amending claims, which we do not believe
14   would be the case here.

15           THE COURT:  So, Mr. Blumenfeld, you have heard
16   those two attempts at distinguishing those decisions.  What
17   is your reaction?

18           MR. BLUMENFELD:  Your Honor, I still see no
19   basis to distinguish them.  The fact that a protective order
20   was already in place may be true.  But in both of those
21   cases, at least as I understood what Your Honor was doing,
22   you were ruling that there was a substantial risk of misuse
23   of the defendants' information in reexamination post-grant
24   review proceedings.  And you wouldn't permit that.

25           The fact that there was already a protective

1    order in place, which didn't address reexamination, and Your

2    Honor found it included reexamination because of that risk

3    in Edwards, I think is pretty compelling here.

4                I am looking at the Bear Creek decision now.  I

5    think Your Honor said twice that you agreed that

6    reexamination is going to involve decision-making even

7    though claim scope can't be broadened in those proceedings,

8    citing the Federal Circuit's decision in the In Re Deutsche

9    Bank case.

10               I am having a lot of trouble seeing what

11   meaningful distinction there is in those cases.

12               THE COURT:  I am, too, Ms. Kung.  I am not

13   inclined to go in a different direction.  There is nothing

14   about the presentation today that would cause me to do that.

15               I am disinclined to your point of view, Ms.

16   Kung.

17               Mr. Blumenfeld, you mentioned a second issue,

18   though.  What is that?

19               MR. BLUMENFELD:  The second issue, Your Honor,

20   was just whether the bar should be unilateral or bilateral.

21               THE COURT:  Okay.  Ms. Kung, do you want to

22   react to Mr. Blumenfeld's response to your fairness

23   argument?

24               MS. KUNG:  I would.  Two small points.  One

25   point being that in the related case in Level 3 the parties

```
 1    were able to negotiate --
 2              THE COURT:  Ms. Kung, we are beyond that.  I
 3    have ruled at least on that.  I am still interested in
 4    hearing you on the fairness point.  You are not going to
 5    change my mind as I have stated it thus far.  I don't think
 6    there is anything distinguishing or sufficiently
 7    distinguishing regarding the posture, that is, that the bar
 8    was already in place, or anything else.
 9              I think the underlying rationale that I
10    articulated stands equally in this case, regardless of what
11    my esteemed colleague, Judge Robinson, has said, I don't
12    know that actually she said anything different or that her
13    rationale or her approach to this is any different than
14    mine.  But if it is, so be it.
15              What about your reaction to Mr. Blumenfeld's
16    points in contrast to your points about fairness?
17              MS. KUNG:  In regards to fairness, I guess we
18    would be willing to offer to refrain from participating in
19    decisions related to making amendments in IPR or any
20    prosecutions, which, again, I understand, is something that
21    the Northern District of California follows.  I know that is
22    not controlling.  But we believe that might address the
23    defendants' concerns.
24              THE COURT:  Are you talking about the Northern
25    District of California rules?
```

```
 1                    MS. KUNG:  Not necessarily the rules, just
 2       common practice with bars on participation with new claims
 3       and amendments.  But there is no prosecution bar when simply
 4       defending against prior art.
 5                    THE COURT:  Mr. Blumenfeld?
 6                    MR. BLUMENFELD:  Your Honor, on the fairness
 7       point, just two little things, then I will address the last
 8       point.
 9                    First, the plaintiff's counsel and the
10       defendants' counsel are in very different positions because
11       of the nature of the information that's being disclosed.  On
12       the fairness point, I don't think I mentioned before, the
13       plaintiff has separate prosecution counsel, two firms, I
14       believe, one in the continuations and one in the IPR.  So
15       it's not like there is some prejudice to them.
16                    The second point is that, on the last point that
17       was made, saying, well, we will refrain from decisions about
18       amendments, that is nice, but the whole point of these
19       protective orders is not that people will intentionally
20       violate them.  It's that there is too high a risk of
21       inadvertent use of information.  Once you have the
22       confidential information, to say, well, I won't directly be
23       involved in the decision-making doesn't really get you very
24       far if you are involved in the points up to that point.  And
25       one of the Judges in the District of Delaware, I don't think
```

1  it was you, Your Honor, talked about how inadvertent use is
2  like the thief in the night.  It really is.  Once you know
3  it and once you are in that position, controlling how you
4  use it is just difficult, if not impossible, to do,
5  notwithstanding your best intents.
6              THE COURT:  I agree, Mr. Blumenfeld.  Therefore,
7  counsel, I am going to accept and I am going to side with
8  the defendant on this.  The language, both parties' language
9  is before me.  I will direct that the defendants' proposal
10 be included, and let's consummate the confidentiality
11 agreement.
12             Counsel, is there anything more?
13             Okay, counsel.  Have a good day.  Take care.
14             (Conference concluded at 11:00 a.m.)
15                        - - -
16 Reporter:  Kevin Maurer
17
18
19
20
21
22
23
24
25