IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1688 (GMS) |
| | ) | |
| CABLEVISION SYSTEMS CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1689 (GMS) |
| | ) | |
| CHARTER COMMUNICATIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1690 (GMS) |
| | ) | |
| COMCAST CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AIP ACQUISITION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1691 (GMS) |
| | ) | |
| COX COMMUNICATIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CSC, CHARTER, COMCAST, AND COX DEFENDANTS'
ANSWERING CLAIM CONSTRUCTION BRIEF AS TO U.S.
PATENT NOS. 6,496,579, 6,078,654, AND 6,188,756**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
psaindon@mnat.com

OF COUNSEL:

Michael L. Brody
Ivan M. Poullaos
Jonathan E. Retsky
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Andrew R. Sommer
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006-3817
(202) 282-5896

Jude J. Andre
Dustin J. Edwards
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX  77002-5242
(713) 651-2715

*Attorneys for Defendants Comcast
Corporation, Comcast Cable Communications,*

ASHBY & GEDDES
Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbe
Benjamin T. Horton
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
tduston@marshallip.com
khogg@marshallip.com
jlabbe@marshallip.com
bhorton@marshallip.com
skalemeris@marshallip.com

*Attorneys for Defendants Charter
Communications Inc. and Charter
Communications Holding Company LLC*

ii

*LLC, Comcast Cable Communications
Management, LLC, Comcast IP Phone, LLC,
Comcast Business Communications, LLC, CSC
Holdings LLC, Cox Communications, Inc. and
Coxcom, LLC*

December 11, 2013

# TABLE OF CONTENTS

Page

I.   Introduction ...................................................................................................................1

II.  Argument .......................................................................................................................1

    A.    "an intercept," "[t]he intercept" ('654 pat., claims 1, 5)..............................1

    B.    "in a manner transparent . . . " ('579 pat., '654 pat., '756 pat.)...................3

    C.    "determining whether a call … should be connected…" ('579 pat., claim 1 and '654 pat., claim 1) ....................................................................................5

"means for determining whether a call … should be connected…" ('579 pat., claim 5)....5

    D.    "connecting the call from the calling party access number to the called party access number" ('579 pat., claim 1 and '654 pat., claim 1) .......................8

"means for connecting the call from the calling party access number to the called party access number" ('579 pat., claim 5).................................................................8

    E.    "calling telephone equipment," "calling party telephone user equipment," and "calling telephone user equipment." ('579 pat., claims 1, 5 and '654 pat., claim 5) ................................................................................................................10

    F.    "calling location" ('579 pat., claims 1, 5; '654 pat., claim 1) .................11

    G.    "selecting a transmission path . . . ." ('654 pat., claim 1) .......................12

    H.    "an intercept that selects a route . . . ." ('654 pat., claim 5) ...................13

    I.    "transmitting to a control location identification for calling telephone equipment and the called telephone equipment" ('579 pat., claim 1).......................14

"means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" ('579 pat., claim 5) ....................14

    J.    "access location" ('756 pat., claim 8) .....................................................16

    K.    "checking a status on each of a plurality of communication access locations . . . to determine which is accessible" ('756 pat., claim 8) ...........................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
   438 F.3d 1374 (Fed. Cir. 2006)...........................................................................................11

*Hormone Research Found., Inc. v. Genentech, Inc.*,
   904 F. 2d 1558 (Fed. Cir. 1990)............................................................................................7

*Leader Technologies, Inc. v. Facebook, Inc.*,
   692 F. Supp. 2d 425 (D. Del. 2010) ......................................................................................7

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ...............................................................................................15

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) .....................................................................1, 16

*Retractable Technologies, Inc. v. Becton, Dickinson and Co.*,
   653 F.3d 1296  (Fed. Cir. 2011)............................................................................................7

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336
   274 F.3d 1336  (Fed. Cir. 2001).............................................................................................1

## I.        Introduction

For each term from the '579, '654, and '756 Patents, Plaintiff either (1) divorces words or phrases from the context of the claim and construes them inconsistently with the intrinsic record, or (2) contends that the term need not be construed, hoping to avoid resolution by the Court and to present nebulous claim terms to the jury.

## II.       Argument

### A.        "an intercept," "[t]he intercept" ('654 pat., claims 1, 5)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "intercept"<br><br>('654, claims 1, 5) | device for intercepting and directing a transmission | device that transparently reroutes a phone call from its intended path to an alternative path |

In light of the plain language of claims 1 and 5, the only construction of the term "intercept" that does not completely vitiate the requirement of transparency, which was added through amendment to obtain the '654 patent, is an "intercept" that "transparently reroutes a phone call from its intended path to an alternative path." This requires that the step of selecting a transmission path (by the intercept) is done in a manner transparent to a calling party and a called party. Specifically, claim 5 describes "the intercept selecting the route *in a manner transparent*." Therefore, based on the language of the claims themselves, the term "transparently" is integral to describing the function of an intercept.[1]

AIP argues that using "phone call," to describe the intercept is too narrow because it excludes paging and fax communications. The specification provides no reason for ensuring that paging or fax messages be included within the scope of an invention that is consistently

---

[1] A "claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." *Phillips*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (quoting *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)).

described in the context of voice calls.  Indeed, the specification offers no examples of paging or

fax communications as plaintiff contends.  *See* Pl. Op. Br. at 34.  In fact, the terms "page" or

"paging" do not appear anywhere in the specification of the '654 patent.[2]

Finally, as explained in Defendants' Opening Brief, the intercept can choose from one of

only two routes for the transmission: (1) the conventional telecommunications network 10 or (2)

data network 20.  *See* '654 pat., 6:49-50; '654 pat., 4:63-5:5 ("local node 16 which … then refers

to a database which advises it whether to attempt to route the call through channel 20 or whether

to employ the conventional communications network 10.").  Accordingly, one route is the

alternative to the other, as reflected in Defendants' proposal that the intercept must be able to

route the call from an intended path to an alternative path.  Defendants' construction also finds

support in the patentee's disclosures during the prosecution of the '809 patent application (the

parent of the '654 patent), which explained that "an intercept . . . selects the appropriate route for

doing so, e.g., via the data channel or phone network."  *See* File History of U.S. Patent 5,710,809

('809 FH), Aug. 27, 1996 Resp. to O.A. at 6 (Ex. 5).

---

[2] Plaintiff also cites to the '756 patent in support of their construction of "intercept."  These citations should be ignored because the specification and scope of the '756 patent differ from those of the '654 patent, and the term "intercept" is not being construed for the '756 patent. Notably, the term "intercept" also does not appear in any asserted claim of the '756.

### B.      "in a manner transparent . . . " ('579 pat., '654 pat., '756 pat.)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "In a manner transparent to . . ."[3] | Transparent is pertaining to a device or system that processes data without the user being aware of or needing to understand its operation. Otherwise, no construction needed. | Without user input during the call, or user awareness of the system handling the call or the stages of the connection process |

Plaintiff bases its claim construction argument on one dictionary definition of the isolated word "transparent" provided to the Patent Office during prosecution and ignores the applicant's contemporaneous arguments applying this definition.  Pl. Op. Br. at 49 at 23-24, 23 n.47. Moreover, AIP criticizes Defendants' definition because "without user input" reads out "clearly contemplat[ed] user input, e.g. called party answering, calling party hanging up, etc."  This criticism incorrectly assumes that answering a phone or hanging it up constitutes "user input."

Plaintiff turns a blind eye to the numerous arguments made during prosecution, and incorrectly claims: "nowhere in the prosecution history has the Patentee provided or even suggested a different definition."  While it is true that the applicant did not provide a different dictionary definition, the applicant did, in fact, elaborate significantly on the one dictionary definition it did provide when arguing over prior art during prosecution.  In order to overcome the Moll reference, the applicant explained that user awareness of (1) the system handling the call or (2) the stage of the connection process, *does not qualify as transparent*:

> Moll does not perform a step of "***selecting a transmission path***" in a
> manner that is transparent to the user ***because the user receives an***

---

[3] There are several variations of the claim term throughout the claims, all of which can be construed in a common manner.  These variations are: "[i]n a manner transparent to a calling party and a called party" ('654 pat., claim 1), "[i]n a manner transparent to the calling party telephone user equipment and the called party telephone user equipment" ('654 pat., claim 5), and "[i]n a manner transparent to users of the calling party access number and the called party access number" ('756 pat., claim 8).

> *announcement that the call will be handled by REDIC* (i.e., a REverse
> DIrection Calling system). The routing-3- direction for the call is therefore
> not selected transparently since the user is made aware of the selection.
> Indeed, as noted in applicant's initial remarks, Moll *subjects the caller to a*
> *plurality of recorded announcements concerning various stages in the*
> *call-connection process* and thus creates a calling experience that differs
> substantially from that of a regular call.

'654 FH, Oct. 29, 1998, Resp. to O.A. at 2-3 (Ex. 6) (emphases added).  Similarly, the applicant

argued over prior art on the basis that the system was "transparent" because it did not require

user input such as "special dialing of access code numbers, etc."  '269 FH, Aug. 27, 1996, Resp.

to O.A at 6 (Ex. 5).  These disclaimers do not "read out" the applicant's proffered dictionary

definition – "without needing to understand [the device/system's] operation" – but rather, are the

applicant's specific examples of how, exactly, the user need not understand the system's

operation in the context of his invention.

       Plaintiff argues that Defendants' proposal cannot be correct because the patents require

"user input" in the form of (a) *a calling party to hang up a phone* and/or (b) *a called party to*

*answer the phone*, when determining whether to connect a call.  This makes little sense: simply

picking up or hanging up a phone is not "user input" in the context of the patents.  More

importantly, though, the applicant during prosecution did not state that answering or hanging up

constituted user input.  The applicant explained user input as that which occurs *between* first

answering the phone and hanging up, "e.g., [] special dialing of access numbers, etc." [4]  *See*

Application for '809 Patent, 8/27/96 Amendment at 6 (Ex. 5).  Additionally, Plaintiff does not

explain how hanging up or answering a telephone would not be excluded by their own proposed

---

[4] AIP also argues that Defendants' construction is unclear, because it could be read to mean "no
user awareness of the system handling the call or no user awareness of the stages of the
connection process," or "no user awareness of the system handling the call and no user
awareness of the stages of the connection process."  Defendants believe their proposed
construction is clear in requiring that the user cannot be aware of either the system handling the
call or the stages of the connection process.

construction, which requires the "device or system [to] process[] data without the user being

aware of or needing to understand its operation."  A user needs to understand a system's

operation in order to hang up, or answer a telephone.

**C.**    **"determining whether a call … should be connected…" ('579 pat., claim 1 and '654 pat., claim 1)**

**"means for determining whether a call … should be connected…" ('579 pat., claim 5)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "determining whether a call from the calling location to the called party access number should be connected [via the telecommunication network]" ('579, claim 1; '654 , claim 1) | No construction necessary | Confirming a connection with the called party prior to performing callback to the calling party |
| "means for determining whether a call from the calling location to the called party access number should be connected via the telecommunication network" ('579, claim 5) | No construction necessary<br><br>Structure: a local node | Structure: central switching unit switch 22<br><br>Function: confirming a connection between the control location and the called party prior to performing callback to the calling party |

Contrary to AIP's assertions, and as explained in Defendants' Opening Brief, the claims

of the '579 and '654 patents detail "determining" and "connecting" steps that are interrelated,

and when read together, require the "callback" functionality disclosed in each of the patents.  *See*

Def. Op. Br. at 9, 10-11.  Each of the above claim terms recites "determining *whether*" to

connect a call "via the telecommunications network."  The following step requires "connecting

the call . . . *when the step of determining results in a determination that the call should be*

5

*connected via the telecommunications network."* AIP's identification of element 60 does not address this limitation because that element does not "determin[e] whether a call . . . should be connected via the telecommunications network"; it merely determines whether a central switching unit will attempt to connect the call. Similarly, element 60 cannot support the follow-on limitation of "connecting," because there is no connection that depends upon it.

The only embodiments disclosed in the '579 and '654 patents that support these interrelated "determining" and "connecting" steps are the callback functions described by Defendants' construction. In the first:

> *[A] callback 40 to the calling party is initiated by central switching unit 22, using communications network 10.* Thereafter callback 40 proceeds as would a normal phone call, passing through local node 16 and, therefrom, to the calling location 12. Thereupon, said *second phone call 38 and first phone call 37 are teleconferenced by central switching unit 22, thusly enabling the calling and called parties to communicate.*

'579 pat., 5:31-39; '654 pat., 5:26-34 (emphases added). *See also* '579 pat., 6:32-38; '654 pat., 6:26-32.

The second embodiment discloses a switch simultaneously originating a call to a "calling node 16" (as opposed to calling location 12) and a "called location 14," which still requires a connection to the called location before connecting the call to the calling location 12.

> *[U]nit or switch 22 simultaneously originates calls to node 16 and called location 14,* while monitoring for an answer at location 14. Called location 12 is kept on hold by node 16 until location 14 answers and instruction 42 is received from unit 22 to node 16 instructing it to complete call 40 to location 12 (see block 69). If an answer occurs, *unit 22 completes the call 40 to calling location 12 and conferences that call to the completed call at location 14, thereby connecting the parties* (see block 71).

'579 pat., 7:37-45; '654 pat., 7:32-40 (emphases added).

This understanding of the invention is further confirmed by the prosecution history. In fact, the applicant addressed this simultaneous embodiment during prosecution, and made clear

6

that "no connection . . . [to] the calling location is established until after a connection is

established . . . [to] the called telephone user equipment."  *See* '654 FH, Oct. 28, 1998, Resp. to

O.A. at 4 (Ex. 6) (addressing claim 8 which represents the embodiment in which the callback to

the called and calling telephone occur "substantially concurrently") (emphasis added).

Moreover, as explained by the patentee, the invention requires implementing the callback by

changing the order of the calls to first connect to the called before party before completing the

call to the calling party.  Accordingly, in order to overcome the prior art, the patentee

unambiguously affirmed that by reversing the order of the calls "the present invention ensures

that charges for the call from the switching unit to the calling location are not incurred until the

system establishes that the call to the called telephone equipment has been answered."  *See* '579

FH, Mar. 15, 2002, Resp. to O.A. at 3-5 (Ex. 7); '654 FH, Oct. 29, 1998, Resp. to O.A. at 4-5

(Ex. 6).  This reverse callback is the foundation of applicant's purported invention.

     Plaintiff's arguments regarding claim differentiation are also inapplicable, as the

identified dependent claims are not redundant of the independent claims.  *See* Pl. Op. Br. at 30,

30 n.67.  Rather than encompass both of the callback techniques described above (successive

calls and simultaneous calls), each of the identified dependent claims relates to a specific form of

callback (i.e., only the first embodiment described above, successive calls).  Even if the claims

did overlap, this alone does not permit a construction that ignores the patentee's clear description

of his invention, and the intrinsic record.  *See Retractable Technologies, Inc. v. Becton,*

*Dickinson and Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011) (holding that the presumption of claim

differentiation between two independent claims and their dependent claims was overcome by a

contrary construction dictated by the written description); *see also Leader Technologies, Inc. v.*

*Facebook, Inc.*, 692 F. Supp. 2d 425, 431 (D. Del. 2010) (J. Farnan); citing *Hormone Research*

*Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990) (holding that claim

differentiation cannot "overshadow" the express and contrary intentions of the patent drafter).

**D.** **"connecting the call from the calling party access number to the called party access number"[5] ('579 pat., claim 1 and '654 pat., claim 1)**

**"means for connecting the call from the calling party access number to the called party access number" ('579 pat., claim 5)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "connecting the call from the calling party access number to the called party access number" ('579, claim 1; '654, claim 1) | No construction needed. | connecting a first call to the called party with a subsequent second call to the calling party in a manner transparent to the calling party and the called party |
| "means for connecting the call from the calling party access number to the called party access number" ('579, claim 5) | Structure is a central switching unit | Structure: central switching unit 22 capable of initiating a reverse direction phone call and structural equivalents.<br><br>Function: connecting a first call to the called party with a subsequent second call to the calling party in a manner transparent to the calling party and |

As explained in Defendants' Opening Brief, and discussed above, the "determining" and

"connecting" steps are dependent upon one another.  The only step of "connecting . . . *when the

step of determining results in a determination that the call should be connected*" is taught only as

a callback functionality.  As described by the patentee, and as used in these patents, callback

requires bridging two calls: a first phone call to the called party and a subsequent "call back" to

the calling party.  Def. Op. Br. at 9.  The word "connecting" appears only once in the

---

[5] Defendants' construction of this phrase applies to the '654 and '579 patents.

specification where it describes bridging two calls together.  *See* '579 pat., 7:42-45; '654 pat.,

7:38-40.  AIP incorrectly asserts that Defendants import the bridging and transparency

limitations, while admitting that the bridging limitation is present in at least one embodiment.  Pl.

Op. Br. at 32 (explaining that teleconferencing (bridging) a first phone call and a second phone

call enables the calling party and the called party to communicate).  To be clear, the bridging

limitation is actually disclosed *in each* embodiment described in the specification of the patents.

In the first embodiment:

> [A] callback 40 to the calling party is initiated by central switching unit 22, using
> communications network 10. Thereafter callback 40 proceeds as would a normal
> phone call, passing through local node 16 and, therefrom, to the calling location
> 12. Thereupon, said *second phone call 38 and first phone call 37 are
> teleconferenced by central switching unit 22, thusly enabling the calling and
> called parties to communicate.*

'579 pat., 5:31-39; '654 pat., 5:26-34 (emphasis added).  *See also* '579 pat., 6:32-38; '654

pat., 6:26-32.  The specification further states that "[u]pon completion of both phonecalls,

*they are teleconferenced, thereby placing the calling and called parties in communication

with each other.*"  '579 pat., 5:15-17; '654 pat., 3:13-15 (emphasis added); *see also* '579

pat., 7:37-45; '654 pat., 7:32-40 ("If an answer occurs, *unit 22 completes the call 40 to

calling location 12 and conferences that call to the completed call at location 14, thereby

connecting the parties* (see block 71).") (emphasis added)

As explained in Section II.C above, performing a "simultaneous" callback still

requires a connection to the called party before completing the connection to the calling

party.  Therefore, in every case, the claimed step of connecting the parties requires

bridging a first call and a subsequent second call.  The "simultaneous" embodiment,

which AIP points to as evidence undermining Defendants' construction, only relates to

when the call to the calling party and called party *are initiated* from central switching

unit 22.  Claim 4, which uses this same language regarding "initiating" a call, is similarly

unavailing as evidence regarding the conferencing of a first call and a second call.  *See*

'579 pat., cl. 4 ("in response to said status signal, *initiating* a first phone call . . .to said

called party . . and a second phone call . . . to said calling party").

AIP's disagreement with Defendants' structural description of central switching

unit 22 is misplaced.  Defendants' description comes directly from the specification,

which discloses that central switching unit 22 "[in] *its simplest form[is] . . . capable of*

*initiating a reverse direction phonecall*."  '579 pat., 4:49-51; '654 pat., 4:44-46.  While

the phrase "in its simplest form" implies that there are more complex versions, this ability

to "initiat[e] a reverse direction phonecall" must be present in all embodiments.

Accordingly, Defendants' description does not import any limitations into this structure.

**E.    "calling telephone equipment," "calling party telephone user equipment,"**
**and "calling telephone user equipment." ('579 pat., claims 1, 5 and '654 pat., claim 5)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "calling telephone equipment" ('579 claims 1, 5)<br><br>"calling party telephone user equipment / calling telephone user equipment" ('654 claim 5) | No construction necessary | Calling telephone |

AIP's would like this term to read on any telephone equipment, including intermediate

equipment between the called telephone and the calling telephone, despite the clear language of

the claims requiring these claim terms to mean endpoints.  Pl. Op. Br. at 25.  Claims 1 and 5 of

the '579 patent require "transmitting to a control location *identification for the calling telephone*

*equipment* and the called telephone equipment." (emphasis added).  The specification does not

10

disclose, and logic does not support, an embodiment in which the information of a PABX, a "private automated branch exchange," or information identifying any other network equipment between the calling or called telephone equipment is transmitted as claimed.[6]

During prosecution, the patentee affirmed that the claimed telephone equipment is an endpoint, stating that "the present invention ensures that charges for the call from the switching unit to the calling location are not incurred until the system establishes that the call to the *called telephone equipment has been answered*." *See* '579 FH, Mar. 15, 2002, Resp. to O.A. at 3-5 (Ex. 7); '654 FH, Oct. 29, 1998, Resp. to O.A. at 4-5 (Ex. 6) (emphasis added). "Telephone equipment" that is "answered" is an endpoint, not any piece of equipment in between.

**F.    "calling location" ('579 pat., claims 1, 5; '654 pat., claim 1)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "calling location" ('579 claims 1, 5, '654 claim 1) | No construction necessary | Calling telephone |

The intrinsic evidence demonstrates that a successful "callback" to the "calling location" results in a successful connection to the calling party. *See* '654 pat., 3:10-15; '579 pat., 3:11-17. '579 FH, Mar. 15, 2002, Resp. to O.A. at 4 (Ex. 7); *see also* '654 FH, Oct. 29, 1998, Resp. to O.A. at 4 (Ex. 6). This can only occur at a calling telephone such that the term "calling location" means "calling telephone" in the '654 and '579 patents.

While Plaintiff relies on claim differentiation, that doctrine only applies where a proposed construction renders two different claims wholly redundant. *See, e.g., Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-1381 (Fed. Cir. 2006). AIP has not

---

[6] A private automated branch exchange (PABX) makes connections among the internal telephones of a private organization (i.e., supports an intra- office telephone system).

identified how Defendants' proposed construction of "calling telephone equipment" and "calling location" would make any two claims redundant.

AIP also offers citations discussing a "PABX at the user location" to argue that a distinction exists between a telephone equipment and locations.  But this contradicts the plain language of the claim, which requires the ability to create a "connection" between a calling location and a called location.  *See, e.g.,* '654 pat., claim 1.  Similarly, the patents require "assign[ing] . . . a caller identification number to calling location 12" and "assign[ing] a called identification number . . . for the called location 14."  *See* Pl. Op. Br. at 27 n. 61.  AIP points to no support for such "connections" or "assignment [of] identification number[s]" to any "location" or a "PABX" that resides between the calling location and the called location.

G.      **"selecting a transmission path . . . ." ('654 pat., claim 1)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "selecting a transmission path connecting a calling location and a called location" ('654, claim 1) | No construction necessary | deciding whether to signal the called party through a data network instead of through the voice network |

AIP's attempt to distinguish a calling/called *party* from a calling/called *location* altogether lacks support.  There is no description anywhere, in any patent-in-suit, of any situation in which a calling/called party is not physically present at a calling/called location.  In fact, the specification uses "party" and "location" interchangeably.  '654 pat., 4:60-63 ("there is assigned a called *party* identification number (typically the called telephone number) for the called *location*" and "a phonecall 26 originat[es] from caller *location*").

12

AIP further criticizes Defendants' construction because it limits selection of the transmission path between only the data network 20 or the voice network 10.  But despite AIP's desire to read the claim on all networks, the patent does not disclose any "different networks" for this claim limitation.  AIP's reliance on the alternative network (at step 61 of Fig. 2) cannot be correct because it occurs *after* the subsequent step of the claim (step 61 occurs after step 60, which represents "receiving at a control location information from an intercept . . .").  To accept AIP's argument would require a wholesale rewriting of the order of steps expressed by the claims simply to broaden the inventor's intended meaning of the "selecting" step.  In fact, the only "different network" taught in the '654 patent for the step of "selecting the transmission path," is data network 20, which is "different" from the voice network 10.

**H.**     **"an intercept that selects a route . . . ." ('654 pat., claim 5)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "an intercept that selects a route passing through a control location for connecting a calling party telephone user equipment to a called party telephone user equipment" ('654, claim 5) | Intercept is a device for intercepting and directing a transmission.<br><br>Otherwise, no construction needed. | an intercept that decides whether to signal the called party through a data network instead of through the voice network |

A discussion of this term, which concerns path selection, can be found in Section II.G above, for the construction of "selecting the transmission path . . ."  Like that term, "an intercept that selects a route . . . " relates to the core feature of the AIP patents – the selection, between a traditional telephony network and parallel data network, of a route to signal the called party.

I.  **"transmitting to a control location identification for calling telephone equipment and the called telephone equipment" ('579 pat., claim 1)**

**"means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" ('579 pat., claim 5)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "transmitting to a control location identification for calling telephone equipment and the called telephone equipment" ('579, claim 1) | No construction needed | Transmitting identification information for the calling telephone and the called telephone to a control location over a network independent from the telecommunications network over which the voice communication travels |
| "means for transmitting to a control location identification for the calling telephone equipment and the called telephone equipment" ('579, claim 5) | No construction needed

Structure is a communications link | Structure: transparent telecommunications node 16 (intercept) and structural equivalents

Function: Transmitting identification information for the calling telephone and the called telephone to a control location over a network independent from the telecommunications network over which the voice communication travels |

Plaintiff argues that no construction is needed for these terms, "as their plain and ordinary meaning is *clearly expressed in the specification*."  *See* Pl. Op. Br. at 28.  For support, Plaintiff cites the transmission of control information across "data signaling channel 20," as opposed to telecommunications voice network 10, with which Defendants agree.  *See* Pl. Op. Br. at 28 n. 64; *see also* '579 pat., 5:21-40, 6:51-7:7; '654 pat., 5:16-35, 6:46-7:2 (surrounding disclosure).

14

Plaintiff further agrees that the structure responsible for this transmission is telecommunications node 16 ("the intercept").  Pl. Op. Br. at 29.  A figure depicting the transmission path described by the passage Plaintiff cites as providing the plain and ordinary meaning is provided below. Thus both parties seem to agree that the invention requires transmission of control information across data network 20, and not telecommunications network 10.



FIG. 1

Plaintiff's only complaint appears to be that the language "over a network independent from the telecommunications network over which the voice communication travels" is not present verbatim in the claims.  Nonetheless, claims should be construed in light of the specification and the intended goal of the invention.  *See Markman v. WestView Instruments, Inc.*, 52 F.3d 967, 976-980.

Finally, AIP attempts to infer the intent of the patentee by identifying a claim in which an independent data network is expressly recited.  *See* Pl. Op. Br. at 28.  But this is inconsistent with the patent, which describes the "invention" as requiring transmission of the identification across the independent data network.  *See, e.g.*, '579 pat. 6:55-67 ("As above noted, node 16 will then use its database to determine whether or not to accept the call *for purposes of the present*

15

*international call back method and system . . . if the call is accepted, node 16 will then proceed*

to acquire the destination number, that is, the called party identification number for the called

location 12, as is indicated by block 58. *Therefrom said signal 28 (see FIG. 1), containing the*

*calling and called party identification numbers will be communicated, via data message means*

*18, external channel 20 . . .").*

### J.   "access location" ('756 pat., claim 8)

| Term/Phrase | Plaintiff's Construction | Plaintiff's Construction Defendants' Construction |
|---|---|---|
| "access location" ('756, claim 8) | No construction needed. | end-user device that is the ultimate initiator or ultimate destination of the transmission |

Contrary to its contentions, AIP's citations to the specification actually *support*

Defendants' construction. AIP attempts to distinguish access locations from endpoints (e.g.,

computers and phones) by citing to a portion of the specification that, according to AIP, "refers

to them separately." AIP's citation, though, actually lists computers and phones as *examples* of

access locations by using a "for instance" clause. Pl. Op. Br. at 37; *citing* '756 pat., 5:18-29

("checks the status of each of these communication networks at *different access locations* to

determine whether any are being accessed by the party at that time …*For instance*, the check

may reveal that the c*alled party's computer is logged in or that the phone is hooked up*, etc."). In

addition, claim terms "should be construed consistently with [their] appearance in other places in

the same claim or in other claims of the same patent." *Phillips v. AWH*, 415 F.3d 1303, 1314

(*quoting Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)). AIP admits

that at least the language of claim 9 supports Defendants' construction, and requires the access

device to be an end-user device. *See* Pl. Op. Br., 37 n.87. AIP argues that claims 8 and 11 route

16

"through" an access device, warranting a different construction.  Claims 8 and 11, though, are indistinguishable from claim 9 because each checks availability at, and facilitates communications to, an end user device.  In fact, the term "through" is used in several places within claim 8, in which it can only imply "at least to a destination, including "checking for authorization to allow communications *through at least the identified access location*," and including "converting said communications *through at least said identified access location*."  In light of this usage, and the tenet of consistent usage of terms, the access location must mean an end user device.

> **K.    "checking a status on each of a plurality of communication access locations . . . to determine which is accessible" ('756 pat., claim 8)**

| Term/Phrase | Plaintiff's Construction | Plaintiff's Construction<br>Defendants' Construction |
|---|---|---|
| "checking a status on each of a plurality of  communication access locations . . . to determine which is accessible"<br><br>('756, claim 8) | No construction needed. | checking availability for each of a plurality of access locations prior to initiating a call to the called party |

The plain language of the claim requires the "checking" step to occur prior to initiating the call.  *See* Def. Op. Br. at 17-18 ("checking a status . . " (step (b)) must occur prior to "checking for authorization . . " (step (d)) and "routing . . " (step (e)), as each limitation references the previous limitations).  Defendants' construction is consistent with the claim language, as well as the purpose and end-result of "checking the status of  . . . access locations" – determining the called party's availability to receive a call.

AIP's criticisms either (1) rely on evidence which only further supports Defendants' construction or (2) relate to peripheral issues that do not address the core of Defendants' proposal.  First, AIP argues that the '756 patent separates "checking a status" and "checking

availability."  But AIP's citation in footnote 91 does not support that proposition.  In fact, footnote 91 only explains that the status check occurs prior to initiating a call, which is exactly the Defendants' proposed construction.  *See* Def. Op. Br. at 17 (citing '756 pat., 2:28-42 ("the system initiates an inquiry to the called party from the control location and waits for a status signal as to the called party location's availability to take incoming calls.")).

Similarly, AIP's claim that Defendants' proposal reads out the language "associated with said called party access number" is a minor distinction.  The relationship between the "called party access number" and the "plurality of access locations" is inherent in steps (a) and (b) of the claim.  Nonetheless, to the extent any ambiguity is perceived, Defendants would agree to include this language into their proposed construction to provide the necessary clarification.[7]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
psaindon@mnat.com

ASHBY & GEDDES

*/s/ Andrew C. Mayo*
_____
Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

_____

[7] A construction revised to address AIP's concern would read: "checking availability for each of a plurality of access locations , each associated with said called party access number,  prior to initiating a call to the called party."

OF COUNSEL:

Michael L. Brody
Ivan M. Poullaos
Jonathan E. Retsky
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Andrew R. Sommer
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006-3817
(202) 282-5896

Jude J. Andre
Dustin J. Edwards
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX  77002-5242
(713) 651-2715

*Attorneys for Defendants Comcast
Corporation, Comcast Cable Communications,
LLC, Comcast Cable Communications
Management, LLC, Comcast IP Phone, LLC,
Comcast Business Communications, LLC, CSC
Holdings LLC, Cox Communications, Inc. and
Coxcom, LLC*

December 11, 2013

7845131

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbe
Benjamin T. Horton
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
tduston@marshallip.com
khogg@marshallip.com
jlabbe@marshallip.com
bhorton@marshallip.com
skalemeris@marshallip.com

*Attorneys for Defendants Charter
Communications Inc. and Charter
Communications Holding Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 11, 2013, upon the following in the manner indicated:

Richard D. Kirk, Esquire                                     *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Karen J. Bromberg, Esquire                              *VIA ELECTRONIC MAIL*
Francisco A. Villegas, Esquire
Damir Cefo, Esquire
Joyce E. Kung, Esquire
Christopher M. P. Jackson, Esquire
COHEN & GRESSER LLP
800 Third Avenue
New York, NY  10022


                                        */s/ Paul Saindon*

                                        _____

                                        Paul Saindon (#5110)

1