**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AIP ACQUISITION LLC,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>LEVEL 3 COMMUNICATIONS, LLC,<br><br>　　　　　Defendant. | C.A. No. 12-617-GMS |

AIP ACQUISITION LLC,

　　　　　　　　　Plaintiff,

v.

CSC HOLDINGS, LLC,

v.

CHARTER COMMUNICATIONS, INC., and CHARTER
COMMUNICATIONS HOLDING COMPANY, LLC,

v.

COMCAST CORPORATION, COMCAST CABLE
COMMUNICATIONS, LLC, COMCAST CABLE
COMMUNICATIONS MANAGEMENT, LLC,
COMCAST IP PHONE, LLC, and COMCAST BUSINESS
COMMUNICATIONS, LLC,

v.

COX COMMUNICATIONS, INC. and COXCOM, LLC,

v.

TIME WARNER CABLE INC., TIME WARNER CABLE
LLC,TIME WARNER ENTERTAINMENT COMPANY,
L.P., TWC COMMUNICATIONS, LLC, and TWC
DIGITAL PHONE LLC,

　　　　　　　　　　　Defendants.

C.A. No. 12-cv-01688-GMS
C.A. No. 12-cv-01689-GMS
C.A. No. 12-cv-01690-GMS
C.A. No. 12-cv-01691-GMS
C.A. No. 12-cv-01692-GMS

**JURY TRIAL DEMANDED**

**DEFENDANTS' RESPONSIVE**
**CLAIM CONSTRUCTION BRIEF AS TO U.S. PATENT 7,724,879**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

    A.   "An Internet Protocol" (claim 1) ......................................................................... 1

    B.   "Signaling Messages" (claim 15) ........................................................................ 2

    C.   "[First, Second] Access Device" (claims 1, 3) .................................................... 5

    D.   "Telecommunication Nodes" (claim 1) ............................................................... 8

    E.   "Receiving A Transmission In A First Format Through A First Communication Network From A First Access Device" (claim 1) ...................................................... 10

    F.   "First Communication Network / Analog Telephone Network / Digital Telephone Network" (claims 1, 4) .......................................................................................... 12

    G.   "Telecommunication Protocol" (claim 1) .......................................................... 14

    H.   "Sending The Converted Transmission Through A Second Communication Network, The Second Communication Network Being A Data Network, For Reception By A Second Access Device" (claim 1) ............................................................................ 16

    I.   "a further format suitable for the second access device" (claim 1) ...................... 18

III. CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Novapharm Ltd.*,
  323 F.3d 1324 (Fed. Cir. 2003)..................................................................8

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004)................................................................17

*Grape*,
  *Tech.*, Civ. A. No. 08-408 (GMS)..............................................................1

*Grape Tech. Group, Inc. v. Jingle Networks, Inc.*,
  Civ. A. No. 08-408 (GMS) ..................................................................I, 13

*Kruse Tech. P'ship v. Volkswagen AG*,
  __ F. App'x __, 2013 WL 5526526 (Fed. Cir. 2013) ............................9, 18

*Merck & Co. v. Teva Pharms USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)........................................................9, 10, 18

*Phillips v. AWH Corp.*,
  415 F. 3d 1303 (Fed. Cir. 2005)............................................................5, 7

*PHT Corp. v. Invivodata, Inc.*,
  CIV.A. 04-60 GMS, 2005 WL 1189552 (D. Del. May 19, 2005)...............7, 8

## I.    INTRODUCTION

AIP contends that because Defendants are seeking constructions of 13 claim terms from

U.S. Patent No. 7,724,879[1] (the "'879 patent"), Defendants are contradicting this Court's

standing order that only ten terms per patent can be submitted for construction. *See* Order,

*Grape Tech. Group, Inc. v. Jingle Networks, Inc.*, Civ. A. No. 08-408 (GMS) (D.I. 35), at 1 n.1

(D. Del. Oct. 20, 2009).  But as this Court recognized in *Grape Tech*, like terms that are grouped

together may count as a single term for purposes evaluating compliance with the Court's

standing order. *Compare id.* at n.1 (noting that the "parties have submitted for construction 19

terms from U.S. Patent No. 7,023,969"); and Joint Claim Construction Chart, *Grape Tech.*, Civ.

A. No. 08-408 (GMS) (D.I. 33-1), 8-16 (D. Del. Oct. 2, 2009) (the claim chart for the '969 patent

had 25 terms for construction listed; the terms were organized into 19 rows, with three of those

rows having groupings of similar terms).  As reflected in Section II. below, Defendants have

proposed only 9 groupings of similar terms for construction.

## II.    ARGUMENT

### A.  "An Internet Protocol" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "an internet protocol" | A datagram protocol where a datagram is a self-contained, independent entity of data carrying sufficient information to be routed from the source to the destination computer without reliance on earlier exchanges between this source and destination computer and the transporting network. | One of a set of protocols used on the Internet, such as TCP/IP, used to link dissimilar computers across a variety of other networks and protocols. |

---

[1] Except where otherwise indicated, all citations in the format __:__ refer to the column and line numbers of the '879 patent, and all citations to claims refer to the claims of the '879 patent.

AIP's proposed construction of "internet protocol," which, *inter alia*, limits the meaning of the phrase to a "datagram protocol," is unsupported by—and even contradicts—the specification. As an initial matter, neither the specification nor the file history support that construction, or so much as use the word "datagram." That alone, as the Patent Office has already observed,[2] requires rejection of AIP's proposed construction. But that is just the tip of the iceberg.

AIP's construction also contradicts the specification by excluding protocols that the specification explicitly *includes* within the meaning of "internet protocol." Indeed, as explained in Defendants' Opening Claim Construction Brief as to U.S. Patent 7,724,879 ("Defendants' Opening Brief") (pp. 5-6), AIP's proposed construction does not appear to even cover the patent's only disclosed embodiment of an "internet protocol"—TCP/IP—even though AIP itself admits that "the 'internet protocol' of the '879 Patent includes TCP/IP." (AIP's Opening Claim Construction Brief ("AIP") at 8.) More specifically, AIP's proposed construction requires routing "without reliance on earlier exchanges between this source and destination computer and the transporting network." TCP/IP, however, does rely on such earlier exchanges. No information can be sent using TCP-IP unless exchanges have previously taken place in order to set up a "connection." *See* Ex. 28, *Transmission Control Protocol*, RFC 793 § 1.5 (Sept. 1981) ("When two processes wish to communicate, their TCP's *must first establish a connection* (initialize the status information on each side).");  *accord* Ex. 37, Andrew S. Tanenbaum, *Computer Networks* 521 (3d ed. 1996) (cited by AIP) ("The Internet has two main protocols in the transport layer, a *connection*-oriented protocol and a connectionless one. . . . The

---

[2] *See* Ex. 23, Decision Instituting *Inter Partes* Review, *Level 3 Commc'ns, LLC v. AIP Acquisition, LLC*, IPR2013-296, at 20-21 (P.T.A.B. Oct. 31, 2013) (granting *inter partes* review and noting that "the term 'datagram protocol' does not appear in the Specification").

2

*connection*-oriented protocol is TCP.") AIP's proposed construction thus excludes TCP/IP, the preferred embodiment.

AIP argues that Defendants' construction "encompasses both ATM and frame relay, in direct contravention of the '879 Patent specification." (AIP at 11.) That is simply incorrect. Defendants' construction does not need an unsupported "datagrams" limitation to exclude ATM and frame relay because, as explained below, those protocols do not "link dissimilar networks"—they *are* the "dissimilar networks" that are linked by an internet.

"[A]n internet protocol," under Defendants' construction, does not cover ATM or frame relay, because Defendants require that it be a protocol "used on the Internet . . . used to link dissimilar computers across a variety of other networks and protocols." The specification uses this exact language to distinguish ATM and frame relay from TCP/IP, which is the preferred embodiment of "an internet protocol": "The Internet network differs from frame relay switching and asynchronous transfer mode [ATM] by using internet protocols such as transmission control protocol/Internet protocol (TCP/IP), *which is a set of protocols* developed by the Department of Defense *to link dissimilar computers across a variety of other networks and protocols.*" 7:33-39. Thus internet protocols "link dissimilar networks" (as Defendants' construction requires), while ATM and frame relay are merely examples of the "dissimilar networks and protocols" that are linked by an internet protocol.

Extrinsic evidence confirms (and illustrates) the specification's explanation that internet protocols run across a variety of underlying networks and protocols (such as ATM and frame relay). *See* Ex. 38, Douglas Comer, *Internetworking with TCP/IP Vol. I: Principles, Protocols, and Architecture* 56-57 & Fig. 3.3 (depicting the internet as a larger cloud comprised of smaller clouds where each smaller cloud is one discrete type of network):

3



**Figure 3.3** (a) The user's view of a TCP/IP internet in which each computer
appears to attach to a single large network, and (b) the structure
of physical networks and gateways that provide interconnection.

The above figure illustrates the fundamental difference between an internet (like *the* Internet) and its constituent networks (like ATM/frame relay). TCP/IP links the "dissimilar networks" referred to in the patent (and depicted as the smaller clouds in the figure) to form the larger cloud which constitutes an internet. Thus ATM and frame relay are examples of the "dissimilar networks" linked by TCP/IP or other internet protocols. Defendants' construction is explicitly directed to protocols that "link dissimilar computers across a variety of other networks and protocols" and not the constituent networks such as ATM and frame relay which an internet protocol links together to form an internet.

### B. "Signaling Messages" (claim 15)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "signaling messages" | Control information exchanged between two points in a network to establish, maintain and/or remove a phone call as distinguished from conversation information exchanged between a caller and a call recipient over an already established phone call. | information related to the establishment and control of a connection to facilitate telecommunications |

4

AIP admits that, when read together, independent claim 1 and dependant claim 15 require that signaling messages "be in a format that comprises a *telecommunication protocol 'for* establishing and *transmitting voice* communication for a phone call."[3] (AIP at 12 (citing claims 1 & 15.))[4] Obviously, a "telecommunication protocol" that is used for "transmitting voice" will include the transmission of voice. Yet, AIP's proposed construction contradicts the claims by excluding from the scope of "signaling messages" the very "conversation information" (i.e., "voice communication") that the claims expressly require that they include. (*Id.* at 12 & n.20.)

None of the excerpts AIP relies on from the patent (*see id.* at 12) teach this negative limitation (i.e., that "conversation information exchanged between a caller and a call recipient" should be excluded from the meaning of "signaling messages"). Nor do these excerpts support AIP's attempt to exclude from the scope of "signaling messages" information exchanged "over an already established phone call." As demonstrated in Defendants' Opening Brief (pp. 6-7), the patent discloses multi-staged dialing demonstrating that signaling messages *can* include analog tones which are transmitted during a phone call that has already been established.

AIP also relies on extrinsic evidence, but that is of no help to it either. Indeed, AIP's extrinsic evidence actually contradicts its proposed construction, as it expressly identifies "analog tones" as signaling. (AIP Ex. 20, E. Bryan Carne, *Telecommunications Primer: Signals, Building Blocks and Networks*, 293 (1995).) And even if the extrinsic evidence did support AIP's construction, that still would not help, because AIP's construction—for the reasons stated above—contradicts both the claims themselves and the specification. *Phillips v. AWH Corp.,*

---

[3] Except where noted, all emphasis in quotations has been added.

[4] *Compare* claim 1 ("receiving a transmission in a first format . . . for establishing and transmitting voice communication for a phone call"); claim 15 ("the transmission comprises signaling messages").

5

415 F. 3d 1303, 1319 (Fed. Cir. 2005) ("extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.")

Finally, AIP's criticisms of Defendants' proposed construction are unwarranted. First, while AIP complains that Defendants' construction "places no qualification on the type of network connection that is established," neither the patent claims nor the specification impose any such restrictions either. *See, e.g.*, claim 1 (requiring a "first communication network from a first access device" but not specifying the "type of network connection"). Furthermore, it is not correct that "Defendants' proposal fails to limit the scope of a 'signaling message' to phone call connections," (AIP at 13) because Defendants' construction of "telecommunication protocol" restricts the format of the transmission comprising the signaling message to "[a] protocol that (1) establishes voice communication and (2) transmits voice communication *for a phone call*." *See* Section II.G. below.

### C.   "[First, Second] Access Device" (claims 1, 3)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "Access device"<br><br>"First access device"<br><br>"Second access device" | A device to access a communications network. | End-user device that is the ultimate initiator or ultimate destination of the transmission. |

AIP's proposed construction covers all devices in a communication path; Defendant's proposed construction includes only end-user devices (e.g., telephones) and excludes mid-network devices (e.g., routers). (*See* AIP at 14 ("the access devices may, but need not, be end-user devices").) While AIP contends that its construction is "amply supported by the intrinsic

6

evidence," (*id.*), *all* portions of the patent on which AIP relies actually contradict its construction, teaching that an "access device" is in fact an end-user device:

- Figures 7A-7G show access devices 150 and 156 as the ultimate initiator and ultimate destination of the transmission at the two extreme edges of the network;

- 9:42-46 and 13:22-24 describe examples of "access devices" that are *all* end-user devices ("telecopier, telex, voice telephone, cellular phone, radio phone, data entry terminal, etc."); and

- claims 3 and 5 define the access devices as belonging to ("connected to") end-users (the "calling party" and "called party.")[5]

AIP argues that U.S. Pat. App. No. 08/320,269 supports its broad construction by making reference to a PABX. (AIP at 14-15.) That application, however, never refers to a PABX as an "access device." (*See* AIP Ex. 5, U.S. Patent Application No. 08/320,269, at 13 ("central switching unit 22 is a PABX").)[6]

Finally, AIP argues that the term "access device" has a plain and ordinary meaning, and that its proposed construction is "consistent" with that meaning. However, AIP does not even identify this supposed plain and ordinary meaning, much less provide citations to dictionaries or the like evincing such a plain meaning.[7] And even if such a plain meaning did exist, the

---

[5] AIP's argument regarding claims 3 and 5 mistakenly conflates the person who initiates or receives a call and the device that person uses to make or receive the call. (AIP at 14.) The specification is clear that the "access device" is the device (such as a telephone) that is *used* by the "calling [or called] party", and is not itself a part of the "calling [or called] party." For example, the specification describes the "calling party" as the "initiator" and the corresponding access device as "the initiator access device." 4:50-56; 11:65-67. Similarly, it describes the "called party" as the "ultimate receiver" and the corresponding access device as the "ultimate destination, i.e., access device[] of the called party." 4:50-56; 13:61-63.

[6] Furthermore, AIP cites to portions of the '269 application that are not reproduced in the asserted '879 patent. In fact, a majority of the '879 patent's specification (including all references to access devices) was only added October 8, 1996 years after the '269 application was filed. Ex. 23, at 21.

[7] *See PHT Corp. v. Invivodata, Inc.*, CIV.A. 04-60 GMS, 2005 WL 1189552, at *1 (D. Del. May 19, 2005) ("[P]ertinent art 'dictionaries, encyclopedias and treatises ... are objective resources

7

definition the patentee gave to the term "access device" in the specification would take

precedence. *See* 13:61-63 ("ultimate destination, i.e., access devices of the called party").[8]

### D.  "Telecommunication Nodes" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "Telecommunication nodes" | No construction needed. | Components that intercept the phone call from a communications network and reroute it from its intended path to an alternate path. |

AIP argues that the term "telecommunication node(s)" has a plain and ordinary

meaning—"a connection point or endpoint on a telecommunication system." However, AIP

does not provide citations to dictionaries, encyclopedias, or any other similar sources evincing

this alleged plain meaning.[9]  Instead, AIP contends that this alleged plain and ordinary meaning

is supported by the portions of the specification that refer simply to "***nodes***" 152, 154, and 160.

(AIP at 22 & n.39.) Thus, as AIP's logic goes, Defendants' proposed construction is inconsistent

with the plain and ordinary meaning of "telecommunication node" because it would not cover

*every* node described in the specification.  (*Id.* at 22.)

---

that serve as reliable sources of information on the established meanings that would have been
attributed to the terms of the claims by those of skill in the art.'" (citation omitted)).

[8] *See PHT Corp.*, 2005 WL 1189552, at *1 ("However, the written description and the
prosecution history 'must be examined in every case to determine whether the presumption of
ordinary and customary meaning is rebutted.' A patentee may rebut the presumption of ordinary
and customary meaning . . . . [T]he patentee, acting as his own lexicographer, may clearly set
forth a special definition of a claim term in the patent specification or file history." (citations
omitted)); *see also Abbott Labs. v. Novapharm Ltd.*, 323 F.3d 1324, 1330 (Fed. Cir. 2003)
("[W]e have previously identified limited situations 'where a sufficient reason exists to require
the entry of a definition of a claim term other than its ordinary and accustomed meaning.' One
such situation is when the patentee 'has chosen to be his or her own lexicographer by clearly
setting forth an explicit definition for a claim term.'")

[9] *See* n.7 *supra*.

8

Defendants are not, however, defining *every* node.  The patentee used the term

"*telecommunication* nodes" in claim 1, not merely "node."  *Merck & Co. v. Teva Pharms USA,*

*Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the

terms of the claim is preferred over one that does not do so.")  The patentee differentiated

between different types of nodes throughout the patent.  For example, the term

"*telecommunication* nodes" is in claim 1, while the terms "first *central* node" and "second

*central* node" are used in claim 2.  Similarly, while the specification describes different types of

nodes, it describes only one "telecommunication node," explaining that this type of node refers

to an intercept device.  4:23-26 ("transparent telecommunications node or intercept 16, first

central local node 18, . . . second central local node.")[10]  AIP does not dispute that the

"telecommunications node" defined in the specification is an intercept.

AIP also contends that Defendants' statement of the function of the intercept device is

incorrect.  While Defendants' construction requires that the intercept device reroute the call from

its "intended path," AIP alleges that there is "no intended path [] prior to the intercept receiving

the transmission, and hence there would be no decision to 'reroute' the transmission to an

'alternate path.'"  (AIP at 23.)  The only support AIP provides for this is an excerpt from the

"summary of invention" (*see id.* (citing 1:66-2:1)) which does not even discuss the function of

---

[10] AIP also argues that Defendants' construction is wrong because it only includes one embodiment (an access device containing an intercept) while excluding others (access device without an intercept).  (AIP at 22.)  However, it is entirely permissible for a patentee to claim only one of several disclosed embodiments.  *Kruse Tech. P'ship v. Volkswagen AG,* __ F. App'x __, 2013 WL 5526526, at *7 (Fed. Cir. 2013) ("This court's precedent is clear that a claim need not cover every disclosed embodiment.  'The mere fact that there is an alternative embodiment disclosed in the asserted patent that is not encompassed by our claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence.'" (citation omitted)).
That is exactly what the patentee did here by claiming the embodiment where the access device contains the intercept.

9

the intercept device. And while AIP argues that this excerpt teaches that "a path may be selected by a central local node *after* receiving a transmission from, e.g., an intercept" (*id.*), that is irrelevant. AIP is talking about the wrong type of node. The function of a *central* local node is not helpful in describing the function of a *telecommunications* node. The telecommunications node (i.e., intercept) routes a transmission to a central local node instead of, for example, telecommunications network 10 depicted in figure 1. *See* 9:27-29 ("The normal transmission from an access device is intercepted by an intercept device, which routes the transmission to a central local node.") The fact that the central local node may subsequently route the transmission says nothing about the function of the telecommunications node.

In sum, claim 1 of the '879 patent requires two "access devices" that each comprise a "telecommunication node." AIP attempts to vitiate the "telecommunication node" limitation on the access devices completely. According to AIP, the meaning of "access device" and "telecommunication node" are virtually identical: an access device is any "device to access a communications network" (AIP at 13) and a "telecommunication nodes" is "a connection point or endpoint on a telecommunication system" (*id.* at 22). As AIP would have it, then, every "access device" would necessarily comprise a "telecommunication node," and the "telecommunication node" limitation of the claims would add nothing. *See Merck*, 395 F.3d at 1372 ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.")

### E. "Receiving A Transmission In A First Format Through A First Communication Network From A First Access Device" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "receiving a transmission in a first format through a first | No construction needed. | receiving a transmission in a first format that originated from a first access device, entered a first |

| communication network from a first access device" | | communication network and passed out the other side of that first communication network. |
|---|---|---|

AIP targets a straw man, not Defendants' actual construction. AIP argues that Defendants' construction must be wrong, because it requires "the access device to be immediately connected to the first communication network." (AIP 17-18.) However, nothing in Defendants' construction requires this. Both claim 1 and Defendants' construction require the transmission come "from a first access device" *and at some point thereafter* pass "through a first communication network." The access device need not be immediately connected to the first communication network.

Next, AIP argues that "the access device may, but need not, 'originate' the transmission . . . ." (AIP at 17.) However, as explained in Defendants' Opening Brief at 8-10 and Section II.C. above, an access device *is* a device that is the ultimate initiator or ultimate destination of a telephone call. Because this claim element requires "*receiving* a transmission . . . *from a first access device*" the "first access device" is the originating access device.

Finally, without addressing the actual claim language at all, AIP argues that nothing in the claim "requires the first communication network . . . to end prior to the conversion step," which is the next claim step of converting from the "first format" into a "second format." (AIP at 18.) In other words, according to AIP, the conversion from the "first format" to the "second format" can occur within the first communication network itself. The claim itself contradicts this argument.

Specifically, claim 1 (on which all other claims depend) requires that a transmission that is "in a first format" be received after it has been sent "through a first communication network." If, as AIP contends, the conversion to the second format can occur in the first communication

11

network, then nothing could ever "receiv[e] the transmission in a first format through a first communication network" once the transmission leaves the first communication network—as required by the claim—because the transmission would already be in the "second format" at the time it was received.

### F. "First Communication Network / Analog Telephone Network / Digital Telephone Network" (claims 1, 4)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "First Communication Network" | No construction needed. | A single network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |
| "Analog Telephone Network" | No construction needed. | A single all-analog network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |
| "Digital Telephone Network" | No construction needed. | A single all-digital network with a plurality of telephones that use a telecommunications protocol to communicate with each other. |

First Communication Network.  AIP argues that no construction is needed for this term because the "first communication network" is "plainly the communication network from which the transmission is received." (AIP at 19.)  While that is true, it ignores the dispute regarding the characteristics of the "first communication network."

AIP first says that the "first communication network" could include "a combination of different networks." (*Id.*)  This contradicts the plain meaning of claim 1, which requires "a" (singular) "first communication network."  It also contradicts the claimed requirement that the first communication network be "one of" (not a combination of) "a digital telephone network, an analog telephone network, and a cellular network."  Although AIP contends that the patent "implicitly recognizes that telecommunication networks may employ 'a combination of

12

networks'" (*Id.* (citing 1:57; 2:22-27)), the portions of the patent AIP relies on say nothing about "a" network being made up of multiple different networks. In fact, the patent distinguishes between "a" network and "a combination of networks." 1:44-57 (referring to the invention as providing a way for smaller carriers to "rout[e] the communication over *a paging network* rather than *a cellular network* or *a combination of networks*."); 2:22-27 (referring to "converting between different forms of communication networks."))

If "a network" can mean any combination of one or more networks as AIP proposes, there would be no way to tell what it means for a transmission to exit a "first communication network" and enter a "second communication network" as required by the claim because there would be no way to distinguish the "first communication network" from the "second communication network".[11] This would render the claim indefinite, which alone is a sufficient reason to reject AIP's proposal.

AIP also contends that the "first communication network" need not have telephones or use a protocol to permit communication between telephones "because the same network can include different devices (*e.g.*, telephones and fax devices)." (AIP at 20.) AIP misunderstands Defendants' construction. Nothing in Defendants' construction excludes networks which have fax machines—indeed, everyone knows telephone networks permit the use of fax machines. What Defendants' construction requires, however, is that the "first communication network" have at least two telephones over which a basic voice telephone call is made, even if it also has other types of devices such as fax machines. This requirement comes from claim 1 itself, which

---

[11] For example, if the "first communication network" can be any combination of networks, why are the claimed "first communication network" and "second communication network" not simply, together, one single communication network? Under AIP's proposal, there would be no way to tell the difference between one "communication network" and multiple different "communication networks."

13

requires that the network transmit using a "voice communication *for a phone call* in one of a digital *telephone network*, an analog *telephone network*, and a *cellular network*." A phone call necessarily requires at least two phones.

Analog Telephone Network and Digital Telephone Network. AIP argues that the claim reciting the "first communication network" to be "*one* of a digital telephone network, an analog telephone network, and a cellular network" does not require an "all analog," "all digital" or "all cellular network" limitation, because the patent describes devices that interconnect two different types of networks. (AIP at 20.) This is a non sequitur: AIP never explains why or how an interconnection device is relevant to the construction of the networks themselves. AIP's non-construction of "analog telephone network" and "digital telephone network" is an improper attempt to broaden these terms such that each would cover a network that is both analog and digital, thereby vitiating any distinction between the two.

### G. "Telecommunication Protocol" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "telecommunication protocol" | No construction needed. | A protocol that (1) establishes voice communication and (2) transmits voice communication for a phone call. |

AIP argues that no construction of "telecommunication protocol" is needed because the word "telecommunication" has a plain meaning, citing a dictionary for the definition: "(1) the transmission of signals over long distance, such as by *telegraph*, *radio* or *television* . . . . (2) (*data transmission*) . . ." (AIP at 7.) Even if true, that definition would be inapplicable to claim 1, which requires on its face that the "telecommunication protocol" be for a "phone call," *not* for telegraph, radio, television or data transmission.

14

AIP also contends that Defendants' construction of "telecommunication protocol" renders part of claim 1 superfluous, because the claim explicitly requires that it be a protocol that (1) establishes voice communication and (2) transmits voice communication for a phone call, making it unnecessary to build those requirements into the construction of "telecommunication protocol" itself. (*Id.*) AIP is partly correct. That Defendants' proposed meaning of "telecommunications protocol" is explicit in claim 1, but only with respect to the first claimed "telecommunications protocol." 15:46. However, Claim 1 also includes "another telecommunication protocol" 16:10-11, for which it does not recite any functionality. Defendants' construction merely seeks to ensure that "telecommunication protocol" is construed consistently in both of these instances.

AIP complains that Defendants' construction excludes fax transmissions and receiving transmissions.[12] Nothing in Defendants' construction, however, excludes protocols which are also used for fax transmissions and for receiving transmissions. Defendants' construction requires that the "telecommunication protocol" must be a protocol that at least (1) establishes voice communication and (2) transmits voice communication for a phone call. If the protocol can *also* be used for other things, such as fax transmissions and receiving transmissions, that protocol would still be a "telecommunication protocol" as recited in claim 1.

Finally, AIP relies on the specification's statement that a call can be "any form of communication" and "not limited just to voice phone calls." (AIP 7.) It is not clear how this statement supports AIP's position because, as AIP itself acknowledges, claim 1 requires on its face that the "telecommunication protocol" be for "voice communication for a phone call." (*Id.*)

---

[12] AIP's misunderstanding of Defendants' "telecommunication protocol" construction is similar to its misunderstanding of Defendants' "first communication network" construction. *See* Section II.F. *supra*.

15

To the extent the specification discloses embodiments of protocols which are not for voice, those

embodiments were not claimed.[13]

**H. "Sending The Converted Transmission Through A Second
Communication Network, The Second Communication Network Being A
Data Network, For Reception By A Second Access Device" (claim 1)**

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "sending the converted transmission . . . for reception by a second access device" | No construction needed. | sending the transmission in the second format . . . so that the transmission in the second format will be received by the second access device. |

AIP says the term "sending the converted transmission . . . for reception by a second

access device" should be accorded its plain and ordinary meaning.  As AIP itself tacitly

acknowledges, though, this limitation and the subsequent limitation of "converting the converted

transmission to a further format suitable for the second access device" contradict each other.  The

former limitation requires that the second access device receive the "converted transmission"

(which the claim says is in a "second format") while the latter limitation requires that the

"converted transmission" (in the "second format") be further converted into a "further format"

before receipt by the second access device.  AIP's solution to this insoluble ambiguity is to

simply ignore the former limitation, not addressing it at all in claim construction.

AIP correctly notes that Defendants' construction of this phrase implicitly requires "that

the second access device can receive and use the transmission *in an internet protocol* (second

---

[13] Notably, the applicants expressly relied on the "voice" limitation to distinguish prior art. *See* Ex. 39, U.S. Patent 7,269,247 Pros. Hist., Oct. 13, 2006 Resp. to O.A. at 13-14 (distinguishing nearly identical claim language in the immediate parent application over a prior art paging system, arguing that such prior art does not relate to "voice communications for a phone call, as expressly recited" in the claims) (emphasis in original); *see also id.*, Mar. 14, 2007 Resp. to O.A. at 9-10 (arguing that the same prior art discloses "communication [] in the form of data messages, i.e., paging messages, not voice communication of a phone call.")

16

format)." (AIP at 21 (emphasis in original).) That construction is required by the claim itself

because the "second format"—the format of the "converted transmission"—is "an internet

protocol." 15:51-53. The claim also requires that the "converted transmission" in the internet

protocol be sent "for reception by a second access device." 16:1-4. The claim is therefore clear

that the second access device must receive the transmission in an internet protocol format. The

fact that, as AIP notes, the final step in claim 1 requires that the second format (internet protocol)

be further converted "from the second format to a further format suitable for the second access

device," and that this contradicts the limitation requiring that the second access device receive

the internet protocol transmission, does not permit the Court to fix the claim. Courts "may not

redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v.

Lamb-Weston, Inc.*, 358 F.3d 1371, 1373-74 (Fed. Cir. 2004) (nonsensical claim requiring

heating the ***dough*** "to a temperature in the range of about 400° F. to 850° F" could not be

construed to mean heating the ***oven*** to that temperature to preserve its validity).

Finally, AIP argues that Defendants' construction is incorrect, because it excludes

disclosed embodiments. However, the specification states that (1) "access devices" can be

"laptops" and "multimedia computer workstations," both of which can receive internet protocol

transmissions, 13:19-25, and (2) that these computers can be connected directly to the data

network, 6:63-66; 7:15-16. By claiming a step where the transmission is sent from the data

network to the second access device in an internet protocol format, the patentee attempts to cover

the disclosed embodiments where a laptop is connected to the data network. Certainly, there is

nothing improper or unusual about a patentee specifically directing a claim to only one of the

17

embodiments disclosed in the specification. *Kruse Tech.*, 2013 WL 5526526 at *7. That is

precisely what the patentee attempted to do with this claim limitation.[14]

### I. "A further format suitable for the second access device" (claim 1)

| Term/Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "A further format suitable for the second access device" | No construction needed. | A further format for the transmission that can be received and understood by the second access device. |

Although AIP argues that no construction is needed for this phrase, its brief demonstrates

that the parties dispute its meaning. AIP's position is that this limitation—which requires that

the "further format" be "suitable for the second access device"—should simply be ignored. (AIP

15-16.) In fact, according to AIP, the "further format" can be a format which the "second access

device" cannot even use, and which is therefore *un*suitable for that access device. (*Id.*) AIP's

attempt to vitiate this limitation must be rejected. *Merck*, 395 F.3d at 1372.

The Court should construe this phrase, because its meaning is not plain from the language

of the claim itself, as evidenced by the parties' dispute over its meaning. Because a format

cannot be "suitable" for a device unless the device can receive and use transmissions in that

format, Defendants' construction should be adopted.

---

[14] As explained above, this claim limitation contradicts the next claim limitation. *See also* Section II.I., *infra*. The next claim limitation attempts (in contradictory fashion) to claim the different embodiment, in which the transmission to the access device is converted from the internet protocol to a "further format" prior to receipt by the second access device.

18

III.    CONCLUSION

For all of the reasons stated above, Defendants request that the Court adopt each of

Defendants' proposed constructions.


Dated: December 11, 2013                    SHAW KELLER LLP

                                            /s/ Jeffrey T. Castellano
OF COUNSEL:                                 John W. Shaw (No. 3362)
                                            Andrew E. Russell (No. 5382)
R. Laurence Macon                           Jeffrey T. Castellano (No. 4837)
AKIN GUMP STRAUSS HAUER & FELD LLP          300 Delaware Avenue, Suite 1120
300 Convent St., Suite 1600                 Wilmington, DE 19801
San Antonio, TX 78205                       (302) 298-0700
(210) 281-7222                              jshaw@shawkeller.com
                                            arussell@shawkeller.com
                                            jcastellano@shawkeller.com

David R. Clonts                             Attorneys for Defendant
Manoj S. Gandhi                             Level 3 Communications, LLC
Iftikhar Ahmed
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002-5200
(713) 220-5800



                                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                            /s/ Paul Saindon
OF COUNSEL:                                 Jack B. Blumenfeld (#1014)
                                            Rodger D. Smith II (#3778)
Michael L. Brody                            Paul Saindon (#5110)
WINSTON & STRAWN LLP                        1201 North Market Street
35 West Wacker Drive                        P.O. Box 1347
Chicago, Illinois 60601                     Wilmington, DE 19899
(312)558-5600                               (302) 658-9200
mbrody@winston.com                          jblumenfeld@mnat.com
                                            rsmith@mnat.com
                                            psaindon@mnat.com

Andrew Sommer                               Attorneys for Defendants Cox,
WINSTON & STRAWN LLP

                                    19

1700 K Street, N.W.
Washington, DC 20006-3817
(202) 282-5896
asommer@winston.com

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
kpadmanabhan@winston.com

Jude J. Andre
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
(713) 651-2600
jandre@winston.com

*Communications, Inc. and CoxCom LLC,
Comcast Corporation. Comcast Cable
Communications, LLC, Comcast Cable
Communications Management, LLC,
Comcast IP Phone, LLC, Comcast Business
Communications, LLC, and CSC Holdings,
LLC*

ASHBY & GEDDES, P.A.

/s/Andrew C. Mayo
Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

OF COUNSEL:

Thomas L. Duston
Kevin D. Hogg
John R. Labbe
Benjamin T. Horton
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
tduston@marshallip.com
khogg@marshallip.com
jlabbe@marshallip.com
bhorton@marshallip.com
skalemeris@marshallip.com

*Attorneys for Defendants Charter
Communications Inc. and Charter
Communications Holding Company LLC*

20

RLF1 9690963v.1

RICHARDS, LAYTON & FINGER, P.A.

OF COUNSEL:
David S. Benyacar
Daniel L. Reisner
David Soofian
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
(212)836-8000

/s/Kelly E. Farnan
Kelly E. Farnan (#4395)
Katharine C. Lester (#5629)
920 N. King Street
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
lester@rlf.com

*Attorneys for Defendants Time Warner
Cable Inc., Time Warner Cable Enterprises
LLC, TWC Communications, LLC and TWC
Digital Phone LLC*

21